EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Zoraida García Morales y otros<br><br>Demandantes-recurridos<br><br>vs.<br><br>Iván Padró Hernández y otros<br><br>Demandados–peticionarios | Certiorari<br><br>2005 TSPR 105<br><br>164 DPR _____ |

Número del Caso: CC-2004-1063

Fecha: 14 de julio de 2005

Tribunal de Apelaciones:

> Región Judicial de Bayamón

Juez Ponente:

> Hon. José Miranda De Hostos

Abogados de la Parte Peticionaria:

> Lcdo. Alfredo Fernández Martínez
> Lcda. Alina Sandoval Matos

Abogado de la Parte Recurrida:

> Lcdo. Joaquín Peña Peña

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

TRIBUNAL SUPREMO DE PUERTO RICO


Zoraida García Morales y
otros

    Demandantes-recurridos

        vs.                        CC-2004-1063      CERTIORARI

Iván Padró Hernández y otros

    Demandados-peticionarios


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 14 julio de 2005

Con motivo de una muerte ocasionada por un accidente, ocurrido entre dos vehículos de motor en el kilómetro 11.6 de la Carretera Estatal Núm. 22, el 4 de octubre de 1996 Zoraida García Morales --por sí y en representación de sus hijos menores de edad Melannie Jo Ann y John Anthony Esteves García--, Esthefanny Pauline Caraballo García y Helen Peña Esteves[1] radicaron ante el Tribunal de Primera Instancia, Sala Superior de Bayamón, una demanda de daños y perjuicios contra Iván R. Padró Hernández, Efraín Benítez Morales, el Secretario del Departamento de Transportación

---

[1] Los co-demandantes, recurridos, son la esposa, los hijos, la hija de crianza y la madre del occiso, respectivamente.

y Obras Públicas, la Autoridad de Carreteras y Transportación, en adelante la Autoridad de Carreteras, General Accident Insurance Company y la Compañía de Seguros X[2].

En la referida demanda se alegó, en síntesis, que el 1ero de mayo de 1996 mientras Iván Esteves Peña transitaba[3] a velocidad moderada en horas de la mañana por la Carretera Núm. 22 se encontró de súbito --al llegar al kilómetro 11.6 en el sector Cataño-- con una máquina barredora[4] propiedad de la Autoridad de Carreteras; alegaron que al encontrarse repentinamente los vehículos se produjo un fatal impacto entre ambos. Se adujo que la barredora de la Autoridad de Carreteras no tenía señal alguna --conforme a los requisitos mínimos establecidos para identificar dicha función-- que advirtiese al público que se estaban llevando a cabo labores de limpieza o reparación de la carretera; alegaron, además, que esta negligencia de la Autoridad de Carreteras y de sus empleados al no tomar las medidas de seguridad necesarias --exigidas por las mejores normas de diligencia y la ley--

---

[2] Alguna de estas últimas codemandadas tenía una póliza de seguros expedida a favor de la Autoridad de Carreteras para cubrir daños como los que se alegaban en la demanda.

[3] Al momento del accidente Esteves Peña conducía un Ford Van, modelo Econoline, tablilla 361-957, propiedad de Federal Express, Corp.

[4] La barredora de la Autoridad de Carreteras --conducida al momento de los hechos por Padró Hernández-- era un camión Ford 1992, modelo 7000, tablilla 461-138.

fue lo que provocó el accidente y, en consecuencia, la muerte de Iván Esteves Peña[5].

Luego de varios trámites e incidentes procesales, el 14 de octubre de 1999 la parte demandante enmendó su demanda[6] y presentó, a su vez, una Moción de Desistimiento sin Perjuicio en relación con Padró Hernández y Benítez Morales. Mediante sentencia a esos efectos, el foro primario declaró con lugar la referida moción.

Posteriormente, el foro de instancia --a solicitud de ambas partes[7]-- ordenó la bifurcación del caso. Conforme a lo anterior, el Tribunal de Primera Instancia señaló una vista únicamente para determinar si la Autoridad de Carreteras incurrió en negligencia en la gestión de

---

[5] En virtud de lo anterior, los co-demandantes solicitaron que los codemandados pagaran solidariamente la suma de $2,400,00.00 como pago, entre otras cosas, de los sufrimientos experimentados por el occiso a causa del terrible dolor que sintió luego del accidente y antes de morir, los ingresos dejados de percibir por el occiso, los daños sufridos por su madre por la pérdida de su único hijo, y la falta de afecto y compañía.

[6] La demanda se enmendó para sustituir a Helen Peña Esteves --por haber fallecido-- por sus herederos Melannie Jo Ann Esteves García y John Anthony Esteves García. El foro primario concedió la referida solicitud.

[7] Las partes acordaron que sería conveniente celebrar vistas separadas con miras a que el Tribunal de Primera Instancia determinara a través de la prueba, la negligencia si alguna de las partes envueltas en el accidente con el propósito de mover a una posible transacción. Luego si fuera necesario, y no se llegara a un acuerdo, se procedería entonces con otra vista para desfilar evidencia relacionada con los daños alegados por la reclamante.

limpieza de la autopista que se realizaba con la barredora el día del accidente objeto del pleito.

Celebradas las correspondientes vistas[8], y luego de que las partes sometieran sendos proyectos de sentencia, el tribunal de instancia emitió un dictamen disponiendo finalmente del aspecto de negligencia del caso.[9] A esos efectos, resolvió que --a la luz de la evidencia documental y testifical recibida-- el camión barredora no estaba equipado con los aditamentos de aviso y seguridad adecuados y necesarios para llevar a cabo una operación de limpieza de carriles en una avenida de gran magnitud y densidad de tránsito, como lo era la Carretera Núm. 22. Determinó que la Autoridad de Carreteras no tenía señales efectivas a los fines de alertar a los conductores del peligro existente en la carretera ya que el reflejo solar disminuía en gran medida la efectividad del biombo que tenía colocado. En virtud de lo anterior, concluyó que la Autoridad de Carreteras fue negligente --debido a su

---

[8] Las vistas sobre negligencia se celebraron los días 23 de febrero de 2000, 16-24 de octubre de 2000, 22, 24, 25 y 28 de enero de 2002, 22-24 de enero de 2003, 17, 19, 21, 24 de marzo de 2003, 7 y 8 de julio de 2003.

[9] El dictamen fue titulado *Relación del Caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia sobre la Negligencia*. El mismo fue emitido el 10 de mayo de 2004 y notificado el 14 de junio de 2004. Vale la pena destacar que el volante de notificación utilizado fue el reservado para la notificación de sentencias, mediante el cual se apercibe a las partes el derecho a instar un recurso de apelación.

conducta y omisiones-- y su negligencia fue la <u>única causa</u> del accidente que ocasionó la muerte de Esteves García.

Insatisfecha con tal determinación, el 13 de septiembre de 2004 la Autoridad de Carreteras acudió, vía recurso de apelación, ante Tribunal de Apelaciones; alegando como único señalamiento de error que había incidido el foro primario en su evaluación de la prueba presentada en la vista de negligencia al concluir que el accidente de tránsito objeto del caso, se debió única y exclusivamente a la negligencia de la Autoridad de Carreteras.[10]

Acogido el recurso como uno de *certiorari* por tratarse de una resolución de naturaleza interlocutoria, el 30 de septiembre de 2004, el foro apelativo intermedio,

---

[10] Se alegó, específicamente, que el accidente ocurrió debido, únicamente, a que Esteves conducía ilegalmente y a exceso de velocidad, se cambió del centro del carril al de la izquierda precipitadamente y sin examinar las condiciones del carril hacia el cual se dirigía, lo cual no reflejó un comportamiento prudente y razonable. Se alegó, además, que el conducir a exceso de velocidad fue lo que impidió que Esteves Peña tuviera el pleno dominio de su vehículo de manera que pudiera reaccionar a tiempo y evitar el accidente tan pronto se percata de la situación peligrosa en la cual expuso su seguridad y vida, así como la de los demás. Se adujo que, debido a ello, no logró frenar por completo su vehículo para impedir el choque, ni regresar al carril del centro, ya que había alcanzado el vehículo que se encontraba al frente suyo en el carril del centro. En virtud de lo anterior, se indicó que ningún artefacto de advertencia hubiese sido efectivo para evitar el accidente. Por último, alegaron que las actuaciones Esteves no podían ser prevista por la Autoridad de Carreteras, y por tal razón no podía imponérsele responsabilidad ya que únicamente respondía si hubiese violado el deber de previsibilidad conforme al artículo 1802 del Código Civil, 31 L.P.R.A. § 5141.

mediante resolución esos efectos y sin discutir el error planteado, <u>denegó</u> el auto solicitado. Fundamentó su determinación en que de acogerse el recurso se podría causar un fraccionamiento indebido del pleito y la dilación innecesaria para la adjudicación final sobre la cuantía de los daños. El tribunal apelativo intermedio, a esos efectos, expresó:

> "<u>Tratándose de una resolución interlocutoria, la cual no puede ser apelada por no ser final y ejecutable</u>, el peticionario...<u>deberá esperar que se resuelva el aspecto de la cuantía de daños para poderla revisar</u>. Nuestra intervención en esta etapa del proceso, como dispone la jurisprudencia, <u>sería a destiempo pues de no probarse los daños por la parte demandante aquí recurrida, se convertiría en "ilusoria" la adjudicación de daños</u>, ya sea por transacción o en los méritos, entonces la sentencia emitida por el tribunal de instancia será final, ejecutable y apelable."

Inconforme con tal determinación, el 15 de noviembre de 2004, la parte demandada recurrió, oportunamente ante este Tribunal --vía *certiorari*-- imputándole al foro apelativo intermedio, en síntesis y en lo pertinente, haber errado al denegar el recurso de *certiorari* presentado por el fundamento de que, intervenir en esta etapa de los procedimientos, dilataría innecesariamente la resolución final del pleito.

Atendida la petición de *certiorari*, le concedimos veinte (20) días a la parte demandante-recurrida para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar sentencia revocatoria de la

resolución emitida por el Tribunal de Apelaciones. Contando con la comparecencia de las partes, y estando en condiciones de resolver el recurso, procedemos a así hacerlo. <u>Revocamos</u>; veamos por qué.

I

Como es sabido, la Regla 43.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 43.1[11], define el término sentencia como "cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa". <u>U.S. Fire Insurance Co.</u> v. <u>A.E.E.</u>, 151 D.P.R. 962, 967 (2000); <u>Román et. al.</u> v. <u>K-mart Corp. et al.</u>, 151 D.P.R. 731, 739 (2000); <u>Feliberty</u> v. <u>Soc. de Gananciales</u>, 147 D.P.R. 834, 838 (1999); <u>De Jesús</u> v. <u>Corp. Azucarera de P.R.</u>, 145 D.P.R. 899, 903 (1998). Es decir, es aquella determinación que "pone fin

---

[11] La Regla 43.1, ante, dispone lo siguiente:

> Según se usa en estas reglas, el término "sentencia" incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la cual pueda apelarse.

> El término "sentencia", cuando es dictada por un tribunal de apelación, se refiere a la determinación final de ese tribunal en cuanto a la apelación ante sí o en cuanto al recurso discrecional en el cual el tribunal de apelación ha expedido el auto solicitado. La determinación final del tribunal de apelación cuando éste deniega discrecionalmente el auto solicitado se denomina "resolución". La determinación final del tribunal de apelación cuando éste desestima por cualquier causa o archiva por desistimiento un recurso de apelación, se denomina "sentencia".

a la controversia existente entre las partes mediante una adjudicación final". U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 967 (2000); Román et. al. v. K-mart Corp. et al., ante, a la pág. 739; Rodríguez v. Tribunal Municipal, 74 D.P.R. 656, 664 (1953).

A tono con lo anterior, este Tribunal ha indicado que "una sentencia es final o definitiva cuando resuelve el caso en sus méritos y termina el litigio entre las partes, en forma tal que no queda pendiente nada más que la ejecución de la sentencia." Feliberty v. Soc. de Gananciales, 147 D.P.R. 834, 838 (1999) citando a Cardenas Maxán v. Rodríguez, 119 D.P.R. 642, 655 (1987); Camaleglo v. Dorado Wings, Inc., 118 D.P.R. 20 (1986); Cortes Román v. E.L.A., 106 D.P.R. 504, 509 (1977); Dalmau v. Quiñónez, 78 D.P.R. 551, 556 (1955); Véanse, además: José Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, Publicaciones J.T.S., San Juan, P.R., 2000, pág. 680, Hiram Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, Lexis Nexis, San Juan, P.R., 2001, pág. 351.

Por otro lado, este Tribunal ha definido el término resolución como aquel dictamen que "pone fin a un incidente dentro del proceso judicial" U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 967; Román et. al. v. K-mart Corp. et al., ante, a la pág. 739; De Jesús v. Corp. Azucarera de P.R., ante, a la pág. 904; Rodríguez v. Tribunal Municipal, ante, a la pág. 664. Véanse, además:

Cuevas Segarra, *op.cit.*, pág. 682, Sánchez Martínez, *op.cit.* pág. 351. Dicho de otra manera, la resolución es aquella "decisión en la cual se adjudica un incidente respecto al procedimiento o a los derechos y obligaciones de algún litigante o en cuanto a algún aspecto de la reclamación o reclamaciones que se dilucidan en el proceso, bien sea antes o ya sea después de dictarse la sentencia." Hiram Sánchez Martínez, *op.cit.*, a la pág.351.

Conforme a lo anterior, este Tribunal ha indicado, respecto a la interrelación existente entre una resolución y una sentencia, que, específicamente, "ninguna de las dos constituyen un término genérico dentro del cual pueda entenderse comprendida la otra". U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 967; De Jesús v. Corp. Azucarera de P.R., ante, a la pág. 904; Rodríguez v. Tribunal Municipal, ante, a la pág. 664. De este modo, hemos reiterado que existe una "diferencia conceptual categórica" entre una sentencia y una resolución.[12] U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 967; De

---

[12] Existe además entre ambas una diferencia en la práctica seguida para la notificación. Cuando se trata de una resolución, el tribunal notifica a las partes sin advertirles de su derecho a apelación. Cuando se trata de una sentencia, el secretario le notifica a las partes sobre la adjudicación final, su derecho a apelar, y la fecha exacta del archivo de dicha notificación en los autos, que es la que determina desde cuando empieza a correr el termino para apelar. U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 967; De Jesús v. Corp. Azucarera de P.R., ante, a la pág. 904; Rodríguez v. Tribunal Municipal, ante, a la pág.664

Jesús v. Corp. Azucarera de P.R., ante, a la pág. 904; Rodríguez v. Tribunal Municipal, ante, a la pág. 664.

En virtud de lo anterior, "no es el nombre lo que determina si tal dictamen es una resolución o es una sentencia. Un dictamen judicial puede titularse sentencia y ser realmente una resolución y viceversa". Hiram Sánchez Martínez, op.cit., a la pág. 351-352. A esos efectos, este Tribunal ha señalado que "si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las controversias entre las partes, se constituye en una sentencia final de la cual puede interponerse recurso de apelación". U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 967; Román et. al. v. K-mart Corp. et al., ante, a la pág. 739; De Jesús v. Corp. Azucarera de P.R., ante, a la pág. 903. Véanse, además: Cuevas Segarra, op.cit., pág. 679-680, Sánchez Martínez, op.cit., pág. 351-352.

De igual forma, si el tribunal dicta una sentencia parcial que no cumple con los requisitos de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap.III, R-43.5[13], la sentencia dictada por no ser final no es apelable, sino

---

[13] La referida Regla 43.5 establece el mecanismo procesal que tienen a su disposición los tribunales cuando en un pleito de múltiples reclamaciones o múltiples partes se dicta sentencia para adjudicar menos del total de las reclamaciones o de los derechos u obligaciones de menos de la totalidad de las partes. Es decir, esta regla permite darle finalidad a una sentencia parcial que únicamente resuelva los derechos de una de las partes en un pleito. U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 968; Camaleglo v. Dorado Wings, 118 D.P.R. 20 (1986).

que es una resolución que sólo puede ser revisada mediante recurso de *certiorari*.

Específicamente, este Tribunal ha aclarado que cuando un tribunal bifurca una acción de daños y perjuicios, y fracciona los elementos básicos de negligencia y daños, aunque disponga del primer aspecto, la negligencia, no se resuelve de forma definitiva la cuestión litigiosa de la cual pueda apelarse. Por tal razón, el referido dictamen es "uno de carácter interlocutorio" que "no es final por no ser aún ejecutable". U.S. Fire Insurance Co. v. A.E.E., ante, a la pág. 968; Díaz Burgos v. Navieras de P.R., 118 D.P.R. 297, 301-302 (1987). En virtud de lo anterior, el dictamen relativo al aspecto de negligencia, por no ser final, no es apelable; es una resolución que sólo puede ser revisada mediante recurso del certiorari.

II

Por otra parte, el auto de *certiorari* es el vehículo procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. Pueblo v. Colón Mendoza, 149 D.P.R. 630, 637 (1999). Se trata de un recurso extraordinario en el que se solicita que este Tribunal ejerza su discreción para corregir un error cometido por el Tribunal de Primera Instancia. Negrón Placer v. Srio. de Justicia, 2001 T.S.P.R. 64, res. el 2 de mayo de 2001. Distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la

facultad de expedir el auto de *certiorari* de manera discrecional. Es decir, descansa en la sana discreción del foro apelativo el expedir o no el auto solicitado. Véase, Sánchez Martínez, *op.cit.*, pág. 560.

Específicamente, este Tribunal ha definido discreción como "poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción." Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211 (1990). Es decir, "[d]iscreción es, pues, una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." Pueblo v. Ortega Santiago, ante; Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964).

Sin embargo la aludida discreción del foro apelativo no es absoluta sino ya que como hemos indicado el mencionado concepto "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho porque, ciertamente, eso constituiría un abuso de discreción[14]". Negrón v. Srio. de Justicia, 2001 T.S.P.R. 63, res. el 20 de mayo de 2001.. Pueblo v. Ortega

---

[14] Este Tribunal ha expresado que un tribunal de justicia incurre en abuso de discreción, entre otras y en lo pertinente "cuando el juez, en la decisión que emite, no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; cuando por el contrario el juez, sin justificación y fundamento alguno para ello, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, el juez livianamente sopesa y calibra los mismos". Pueblo v. Ortega Santiago, ante, a las págs. 211-212.

Santiago, ante, a la pág. 211; Pueblo v. Sánchez González, ante, a la pág 200. Esto es así ya que, "el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, ante, a la pág. 211; Pueblo v. Sánchez González, ante, a la pág. 200.

En virtud de lo anterior, y con el fin de que el Tribunal de Apelaciones pueda ejercer de forma sabia y prudente su facultad discrecional de entender o no en los méritos de los asuntos que le son planteados mediante el recurso de *certiorari*, la Regla 40 del Reglamento de ese Tribunal, 4 L.P.R.A. Ap. XXII-A, R. 40., señala los criterios que debe tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[15] Negrón v. Srio. De Justicia. La referida Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error

---

[15] Vale la pena destacar que ninguno de los antes expuestos criterios en la Regla 40 es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva. Sánchez Martínez, *op.cit.,* a la pág. 560.

craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos mas elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Vale la pena destacar que la acción de un tribunal de apelaciones, denegatoria de un auto de *certiorari*, no prejuzga los méritos del asunto o la cuestión planteada, pudiendo ello ser reproducido nuevamente mediante el correspondiente recurso de apelación. Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 755-756 (1992). En consecuencia, la parte afectada por la decisión que finalmente tome el Tribunal de Primera Instancia, no queda privada de la oportunidad de hacer ante el foro apelativo los planteamientos que entienda procedentes una vez se resuelva el pleito. *Ibíd.*

III

La parte peticionaria alega que incidió el Tribunal de Apelaciones al denegar la expedición del recurso de certiorari en el presente caso por el fundamento de que

intervenir en esa etapa de los procedimientos dilataría innecesariamente la resolución final del pleito. Le asiste la razón; veamos por qué.

En el presente caso se bifurcó el pleito de daños y perjuicios para que se adjudicara primeramente la negligencia y luego los daños. Luego de una vista de negligencia que se extendió por 19 días, el foro primario determinó que la negligencia de la Autoridad de Carreteras fue la única causa del accidente que le ocasionó la muerte Estévez Peña.

Inconforme con tal determinación, la Autoridad de Carreteras acudió, vía recurso de apelación, ante el Tribunal de Apelaciones. Correctamente dicho foro acogió el recurso de apelación como recurso de certiorari; esto en virtud de que, como mencionamos anteriormente, se traa de la revisión de una resolución interlocutoria.

Inexplicablemente, sin embargo, el foro apelativo intermedio se negó a expedir el auto. No hay duda de que dicho dictamen no podía ser apelado por no ser una sentencia final y ejecutable; sin embargo esto no significa que dicho foro apelativo intermedio estuviese incapacitado para revisar dicha resolución mediante auto de certiorari.

Sorprende que el foro apelativo intermedio considerara que entrar en los méritos del recurso equivaldría a un fraccionamiento indebido y a una dilación innecesaria para la adjudicación final sobre la cuantía de

los daños y que expedir el auto en esa etapa del proceso era incurrir en un acto a destiempo, pues de no probarse los daños por la parte demandante-recurrida, se convertiría en "ilusoria" la adjudicación sobre negligencia que hizo el tribunal.

Resulta increíble que el foro apelativo intermedio concluyera que no debía expedir el auto —en un caso donde acuden al tribunal una viuda, una madre que perdió a su único hijo y unos niños que se quedaron sin padre— debido a que existe la posibilidad de que la parte demandante no pueda probar daños. ¿Puede concluirse que la muerte de un ser humano no le causa daño alguno a su esposa, a sus hijos y a su madre?

Reconocemos que dicho foro tiene amplia discreción para determinar qué recurso expedir. Sin embargo enfatizamos que dicha discreción no es absoluta e ilimitada. No hay duda que erró el Tribunal de Apelaciones al no expedir el auto solicitado ya que, contrario a lo resuelto, ese era el momento más oportuno para examinar la determinación que sobre la negligencia hiciera el foro de instancia. Dicha revisión promueve la economía procesal debido a que, tal vez, la disposición del recurso haría innecesaria la ulterior determinación de daños si el foro apelativo intermedio entendiera que la Autoridad de Carreteras no fue negligente, o, podría promover, en última instancia, que las partes llegaran a un acuerdo

transaccional, de confirmarse al foro de instancia sobre el aspecto de negligencia.

Estamos convencidos, en fin, de que expedir el auto solicitado en el presente caso no causa un fraccionamiento indebido del mismo, ni se afecta el desarrollo normal del litigio ni se demora su pronta solución; todo lo contrario. Conforme a lo anterior, resulta forzoso concluir que el foro apelativo intermedio abusó de su discreción al resolver de forma contraria a derecho y no sopesar los factores antes detallados.

Se dictará Sentencia de conformidad.


                    FRANCISCO REBOLLO LÓPEZ
                         Juez Asociado

TRIBUNAL SUPREMO DE PUERTO RICO


Zoraida García Morales y
otros

    Demandantes-recurridos

       vs.                      CC-2004-1063       CERTIORARI

Iván Padró Hernández y otros

    Demandados-peticionarios




SENTENCIA


San Juan, Puerto Rico, a 14 julio de 2005


    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto de certiorari y se dicta Sentencia revocatoria del dictamen emitido por el Tribunal de Apelaciones. En consecuencia, se devuelve el caso a dicho foro para la consideración del recurso en sus méritos.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta concurre en el resultado sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino.




                Aida Ileana Oquendo Graulau
             Secretaria del Tribunal Supremo