EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Johnson & Johnson International Inc.<br><br>Peticionario<br><br>vs.<br><br>Municipio de San Juan<br><br>Recurrida | Certiorari<br><br>2007 TSPR 226<br><br>172 DPR \_\_\_\_ |

Número del Caso: CC-2006-208


Fecha: 19 de diciembre de 2007


Tribunal de Apelaciones:

      Región Judicial de San Juan-Panel VI

Juez Ponente:

      Hon. Héctor Urgell Cuebas


Abogado de la Parte Peticionaria:

      Lcdo. Francisco G. Bruno

Abogado de la Parte Recurrida:

      Lcdo. René M. Bermúdez Vélez



Materia: Incumplimiento de Contrato


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Johnson & Johnson International Inc.

     Peticionario

        vs.               CC-2006-208     *CERTIORARI*

Municipio de San Juan

     Recurrida

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 19 de diciembre de 2007

Johnson & Johnson International Inc. --en adelante J&J-- suscribió un contrato con el Municipio de San Juan <u>sobre arrendamiento de un equipo médico</u> para realizar ciertas pruebas químicas a llevarse a cabo en el Hospital Municipal de San Juan. En el contrato se pactó, además, que J&J supliría los reactivos químicos necesarios para realizar hasta un máximo de 600,000 pruebas al año con el referido equipo. El canon de arrendamiento de la maquinaría era de $15,000 mensuales. Por último, el contrato dispuso que, de comprarse pruebas adicionales, éstas serían a razón de treinta y tres centavos la prueba y debían adquirirse mediante órdenes separadas.

Posteriormente, J&J le envió una factura al Municipio por $132,716.10, correspondiente a las pruebas que el Hospital Municipal de San Juan llevó a cabo en exceso de las 600,000 incluidas en el contrato. Ante la falta de pago del Municipio, el 3 de enero de 2001, J&J presentó una demanda sobre cobro de dinero e incumplimiento de contrato en el Tribunal de Primera Instancia, Sala Superior de San Juan. En dicha demanda alegó que entre los meses de julio de 1998 a junio de 1999 el Hospital llevó a cabo 402,170 pruebas en exceso de las 600,000 que incluía el contrato, a treinta y tres centavos cada una lo cual asciende a la cantidad de $132,716.10. Señaló, además, que el Municipio le adeudaba el canon de $15,000 correspondiente al mes de enero de 1996 y $3,988.24 por artículos necesarios para el uso y mantenimiento del equipo arrendado.

En su contestación a la demanda, el Municipio admitió que existía la referida cláusula en el contrato sobre el pago de las pruebas realizadas en exceso de 600,000, más sin embargo, negó adeudar la cantidad reclamada por J&J. Indicó que las actuaciones no autorizadas de funcionarios municipales no obligan al Municipio y que cualquier transacción entre el Municipio y J&J no tiene fuerza vinculante en ausencia de un contrato por escrito.

J&J presentó una moción solicitando se dictase sentencia sumaria. En la moción alegó que no existía controversia sobre el hecho de que se cobrarían treinta y

tres centavos por cada prueba adicional realizada y que el Municipio así lo había admitido en su contestación a la demanda. Argumentó que el Municipio, mediante carta, reconoció la validez de la deuda en tanto justificó el exceso de reactivos ordenados. En cuanto al canon de $15,000 alegadamente adeudado y a los $3,988.24 de materiales, adujo que por virtud del contrato y la prueba documental provista, era evidente que el Municipio también adeudaba las referidas cantidades.

El Municipio se opuso a la solicitud de sentencia sumaria de J&J y, por su parte, presentó una moción de sentencia sumaria en la cual solicitó la desestimación de las causas de acción en su contra. En dicha moción el Municipio adujo que nunca se realizaron órdenes de compra por separado para las pruebas en exceso de 600,000 pruebas dispuestas en el contrato; que no se suscribió un contrato por separado ni se enmendó el contrato vigente para realizar las pruebas en exceso y, por ende, no se cumplieron los requisitos de contratación aplicables a tenor con la Ley de Municipios Autónomos y su jurisprudencia interpretativa. Adujo, además, que no existía un partida presupuestaria para cubrir dichas pruebas en exceso y que éstas no fueron aprobadas por el Alcalde o la Asamblea Municipal.

El 23 de agosto de 2004, notificada el 2 de septiembre del mismo año, el tribunal de instancia emitió sentencia sumaria a favor de J&J. En ésta, ordenó al

Municipio a pagar el total de las reclamaciones ascendiente a $151,704.34, más las costas, intereses y honorarios de abogados.

El 28 de septiembre de 2004, el Municipio solicitó la reconsideración de la sentencia sumaria.[1] El 4 de noviembre de 2004, el tribunal de instancia emitió una orden en la cual acogió, en parte, algunos de los planteamientos del Municipio. A tales efectos, el tribunal dejó sin efecto la sentencia sumaria en cuanto al canon de arrendamiento de $15,000 relacionado al mes de junio de 1998 y la suma de $3,988.24 sobre materiales que según el contrato eran necesarios para el uso y mantenimiento del equipo, sobre lo cual determinó que se celebraría una vista plenaria.[2] Por otro lado, el foro primario denegó la reconsideración en cuanto a la procedencia del pago por las pruebas realizadas en exceso de las 600,000 que incluía el contrato. En cuanto a esto expresó:

---

[1] Cabe aclarar que el 20 de septiembre de 2004, este Tribunal emitió una Resolución debido al paso de la tormenta Jeanne, en la cual suspendimos todos los términos dispuestos en las distintas leyes, reglas o reglamentos aplicables a los procedimientos y trámites judiciales que vencieron, o vencían, entre el 15 al 30 de septiembre de 2004, inclusive. Dispusimos, entonces que dichos términos vencerían el 1 de octubre de 2004, razón por la cual el término para el Municipio presentar la moción de reconsideración, que originalmente vencía el viernes 17 de septiembre de 2004, se extendió.

[2] Según surge del expediente, J&J originalmente planteó que el Municipio adeudaba el canon de arrendamiento del mes de enero de 1996, lo cual resultó ser un error tipográfico. Posteriormente, J&J aclaró que el canon adeudado correspondía al mes de junio de 1998, como señala la factura cursada al Municipio que obra en el expediente.

> [S]e declara sin lugar la reconsideración presentada por entender que <u>no existe controversia de hecho alguna que impida la adjudicación de dicho reclamo por la vía sumaria</u> y por estar convencidos de que la norma de derecho aplicada fue la correcta.

En vista de ello, el tribunal de instancia <u>dictó sentencia sumaria parcial al respecto y ordenó que la sentencia se registrara y se archivara</u>. Dicha orden se notificó el 5 de noviembre de 2004.

Inconforme con dicha determinación, el 3 de enero de 2005, el Municipio acudió mediante *certiorari* ante el Tribunal de Apelaciones. Alegó que el tribunal de instancia incidió al imponerle el pago de las 402,170 pruebas realizadas, en exceso de las 600,000, y al no desestimar la alegación en cuanto a los $3,988.24 por concepto de materiales utilizados para la realización de las pruebas químicas adicionales.

J&J radicó una <u>moción de desestimación</u> en la cual adujo que el Tribunal de Apelaciones <u>carecía de jurisdicción</u> para atender el recurso porque el Municipio había acudido pasado el término de treinta días para acudir ante dicho foro mediante *certiorari*. <u>En síntesis, alegó que el tribunal de instancia había emitido una orden que no constituía una sentencia parcial final, por lo que el Municipio contaba con treinta días para revisarla mediante *certiorari* y no sesenta días, término con el cual cuanta un municipio para acudir al Tribunal de Apelaciones mediante recurso de apelación.</u>

El 2 de febrero de 2005, el Tribunal de Apelaciones emitió una resolución en la cual acogió el recurso de *certiorari* radicado como uno de apelación por entender que el Municipio recurría de una sentencia final.

Finalmente, el 12 de septiembre de 2005, el Tribunal de Apelaciones emitió una sentencia en la cual revocó la determinación en cuanto a la procedencia del pago de las pruebas adicionales. Revocó, además, la partida de $3,988.24 sobre los materiales utilizados para las pruebas pero confirmó la procedencia del canon de arrendamiento de la maquinaria para el mes de junio de 1998.

De dicha determinación, J&J acudió ante este Tribunal ––vía *certiorari*–– aduciendo que el Tribunal de Apelaciones incidió:

> … al no desestimar por tardío el recurso presentado como uno de certiorari acogiendo el mismo como apelación y dictando Sentencia.

> … al resolver que el Contrato suscrito entre Johnson & Johnson y el Municipio requería que las pruebas en exceso se verificaran con órdenes de compra por escrito y firmadas por funcionario autorizado no obstante a que el contrato no contiene disposición alguna al respecto.

> … al resolver que el alegado incumplimiento contractual en cuanto a no verificar las pruebas en exceso mediante órdenes de compra por escrito y firmadas por funcionario autorizado constituye una violación estaturia que hace nula la obligación contraída por el Municipio en cuanto al pago por dichas pruebas.

> … En la alternativa, erró el TA en resolver que no procedía la aplicación de la doctrina de enriquecimiento injusto contra el Municipio no obstante a que conforme a los hechos particulares del presente caso se justificaba la aplicación de dicha doctrina tratándose de un

caso donde el Municipio había aceptado haber llevado a cabo las pruebas en exceso objeto de cobro por Johnson & Johnson según contratado y no hay prueba [al]guna de violación de ley o esquema contrario a la mejor administración pública.

Expedimos el recurso. Estando en posición de resolverlo, procedemos a así hacerlo.


I

La Regla 43.1 de Procedimiento Civil define lo que constituye una "sentencia" en nuestro ordenamiento jurídico. A estos efectos, dicha Regla dispone que "el término 'sentencia' incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la cual pueda apelarse." 32 L.P.R.A. Ap. III, R. 43.1. Dicho de otra forma, una sentencia "pone fin a la controversia existente entre las partes mediante una adjudicación final." García Morales v. Padró Hernández, res. el 14 de julio de 2005, 2005 TSPR 105; U.S. Fire Insurance Co. v. A.E.E., 151 D.P.R. 962 (2000); Román et. al. v. K-mart Corp. et al., 151 D.P.R. 731 (2000); Rodríguez v. Tribunal Municipal, 74 D.P.R. 656 (1953).

Sobre el particular, también hemos expresado que una sentencia es final cuando resuelve definitivamente el caso en sus méritos en forma tal que sólo queda pendiente la ejecución de la sentencia. García Morales v. Padró Hernández, ante; Feliberty v. Soc. de Gananciales, 147

D.P.R. 834 (1999); Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642 (1987); Camaleglo v. Dorado Wings, Inc., 118 D.P .R. 20 (1986).

De otra parte, hemos expresado que una "resolución" es un dictamen que pone fin a un incidente dentro del proceso judicial. Sabido es que el nombre no hace la cosa, y por ello es necesario examinar la determinación del foro de instancia para asegurarnos si ésta constituye una resolución revisable mediante *certiorari* o si se trata de una sentencia, la cual es apelable. García Morales v. Padró Hernández, ante; U.S. Fire Insurance Co. v. A.E.E., ante; Román et. al. v. K-mart Corp. et al., ante.

Por otro lado, a tenor con la Regla 43.5 de Procedimiento Civil, si un pleito consiste de múltiples reclamaciones o partes, el foro de instancia puede dictar sentencia final en cuanto a una de las reclamaciones o una de las partes en particular. En cuanto a ello, la citada Regla dispone que esto es posible "siempre que [el tribunal] concluya expresamente que no existe razón para posponer dictar sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene expresamente que se registre la sentencia." 32 L.P.R.A. Ap. III, R. 43.5.

En otras palabras, para que se entienda que un tribunal ha dictado una sentencia parcial final, a tenor con la Regla 43.5, ésta debe concluir expresamente que no existe razón para posponer el dictamen de una sentencia

sobre la reclamación y tiene que haber ordenado expresamente que se registre la misma. U.S. Fire Insurance Co. v. A.E.E., ante. "Así pues, tratándose de una sentencia final --aunque parcial-- tan pronto es archivada en autos copia de su notificación, comienzan su decurso los términos preceptuados en las Reglas de Procedimiento Civil para la presentación de mociones y recursos post sentencia." Rosario v. Hosp. Gen. Menonita, Inc., 155 D.P.R. 49 (2001). De no cumplir con estos requisitos, la sentencia es una parcial y de carácter interlocutorio. U.S. Fire Insurance Co. v. A.E.E., ante.

Una vez se notifica y se archiva en autos copia de una sentencia final, el término para acudir en apelación ante el Tribunal de Apelaciones comienza a transcurrir. La Regla 53.1 (c) de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que dicho término es de treinta días, contado dicho término desde el archivo en autos de copia de la notificación de la sentencia.

Ello no obstante, si alguna de las partes en el pleito es el Estado Libre Asociado de Puerto Rico, sus funcionarios, los municipios, o una de sus instrumentalidades que no fuere una corporación pública, dicha Regla concede un término de sesenta días para acudir en apelación. Como es sabido, este término es de carácter jurisdiccional. En otras palabras, pasados los días para presentar un escrito de apelación, la sentencia del

tribunal de instancia se convierte en final y firme y la parte pierde su oportunidad para apelar.

De otra parte, cuando lo que se quiere revisar ante el Tribunal de Apelaciones es una resolución interlocutoria, la revisión se tiene que presentar dentro del término de treinta días siguientes a la fecha de notificación de la resolución u orden recurrida. 32 L.P.R.A. Ap. III, R. 53.1 (d)(4). "Dicho término es de cumplimiento estricto, prorrogable sólo cuando mediaren circunstancias especiales debidamente justificadas en la solicitud de *certiorari*." 32 L.P.R.A. Ap. III, R. 53.1 (d)(4).

Los tribunales tienen discreción para extender un término de cumplimiento estricto <u>únicamente</u> cuando la parte demuestra justa causa para la dilación. A estos efectos, los tribunales deben tomar en consideración dos elementos: (1) que en efecto existe justa causa para la dilación, y (2) que la parte interesada acredite de manera adecuada la justa causa. <u>Rojas</u> v. <u>Axtmayer Ent., Inc.</u>, ante; <u>Arriaga</u> v. <u>F.S.E.</u> 145 D.P.R. 122 (1998); <u>Szendrey</u> v. <u>F. Castillo Family Properties, Inc.</u>, ante. En ausencia de ello, los tribunales carecen de discreción para extender dicho término y acoger el recurso ante su consideración. <u>Banco Popular de P.R.</u> v. <u>Mun. de Aguadilla</u>, 144 D.P.R. 651 (1997); <u>Szendrey</u> v. <u>F. Castillo Family Properties, Inc.</u>, ante.

II

J&J aduce que el Municipio acudió en destiempo al Tribunal de Apelaciones por haber presentado un recurso de *cetiorari* el 3 de enero de 2005, pasados los treinta días para acudir ante dicho foro. Alega que el tribunal de primera instancia emitió una sentencia sumaria parcial, no final, el 4 de noviembre de 2004, notificada el 5 de noviembre del mismo año. Por ende, sostiene que ésta sólo era revisable mediante *certiorari* dentro del término de treinta días el cual venció el lunes, 6 de diciembre de 2004.

La orden emitida por el foro primario atendió la moción de reconsideración instada por el Municipio en relación a la sentencia sumaria emitida anteriormente por dicho foro. En dicha orden, el tribunal de instancia dejó sin efecto su determinación previa en cuanto al canon mensual de $15,000 y sobre la partida de $3,988.24 de alegados materiales necesarios para el mantenimiento del equipo. Ahora bien, dicho foro <u>denegó</u> la solicitud de reconsideración respecto a su determinación sobre la imposición de la partida por las pruebas hechas en exceso de 600,000. En cuanto a dicha determinación, concluyó que <u>no</u> existía controversia de hecho alguna que impidiera la adjudicación de dicho reclamo por la vía sumaria. En vista de ello, <u>ordenó que ésta se registrara y se notificara</u>.

No hay duda que la actuación del foro primario equivale a la emisión de una <u>sentencia parcial final</u> en

cuanto a la partida de las pruebas hechas en exceso, pero no así en cuanto a las demás partidas, para las cuales dicho foro determinó la necesidad de celebrar vista plenaria para resolver en cuanto a éstas. Dicho de otra manera, relativo a la partida reclamada por pruebas en exceso, el tribunal de instancia cumplió con los requisitos exigidos por la Regla 43.5 respecto a la sentencia parcial final, revisable mediante apelación. A saber, concluyó expresamente que no existía razón para posponer el dictamen de una sentencia sobre la reclamación y ordenó expresamente que se registrara. Así pues, el Municipio contaba con sesenta días para revisar este dictamen mediante recurso de apelación y por ende, presentó el recurso para revisar la determinación sobre las pruebas en exceso de 600,000 dentro del término jurisdiccional.

Ello no obstante, la determinación del foro primario en cuanto a los materiales necesarios para el mantenimiento del equipo y sobre el canon de arrendamiento, era de carácter interlocutorio revisable mediante *certiorari*, puesto que no dispuso de éstos de manera final, sino que ordenó la celebración de una vista plenaria. En cuanto a ellas, el tribunal de instancia expresó:

> La determinación relacionada a si el cheque 00127141 de 27 de agosto de 1998 corresponde al pago del canon de junio de 1998 requiere se presente prueba en un juicio plenario para su adjudicación. Asimismo ocurre con el reclamo relacionado a los gastos por concepto de

artículos comestibles y piezas necesarias para
el uso y mantenimiento del equipo.

Quiere decir que en cuanto a dicha determinación, y contrario a la otra situación, el Municipio tenía treinta días para revisarla mediante *certiorari*. Habiéndose notificado la referida orden del tribunal de instancia el 5 de noviembre de 2004, el recurso de *certiorari* debió presentarse en o antes del 6 de diciembre de 2004. Es por ello que, en ausencia de justa causa que excusara la dilación, el recurso instando por el Municipio el 3 de enero de 2005 para revisar dichas determinaciones ante el Tribunal de Apelaciones fue tardío. Es por ello que el foro apelativo intermedio carecía de jurisdicción para pasar juicio en cuanto a estas determinaciones.

III

A

Reiteradamente hemos establecido la necesidad de aplicar normas restrictivas en lo que a la contratación municipal se refiere. Ello en aras de promover la rectitud en la administración pública, lo cual está revertido del más alto interés público. Cordero Vélez v. Municipio de Guánica, res. el 12 de febrero de 2007, 2007 TSPR 24; Fernández Gutiérrez v. Municipio de San Juan, 147 D.P.R. 824 (1999).

Así pues, el propósito de los estatutos que regulan la realización de obras y la adquisición de bienes y

servicios para el Estado, sus agencias e instrumentalidades y los municipios, es la protección de los intereses y recursos fiscales del pueblo. De esta forma se evita el favoritismo, el dispendio, la prevaricación y los riesgos del incumplimiento. Colón Colón v. Municipio de Arecibo, res. el 28 de marzo de 2007, 2007 TSPR 61; Lugo Ortiz v. Municipio de Guayama, res. el 29 de octubre de 2004, 2004 TSPR 166; Hatton v. Municipio de Ponce, 134 D.P.R. 1001 (1994).

En vista de lo anterior, los municipios deben actuar conforme a los procedimientos establecidos por la ley y nuestra jurisprudencia interpretativa a la hora de desembolsar fondos públicos para pagar las obligaciones que éstos contraen. La Ley Núm. 18 del 30 de octubre de 1975, 2 L.P.R.A. sec. 97 *et seq*, según enmendada por la Ley Núm. 127 del 31 de mayo de 2004, le impone a las entidades gubernamentales y municipales la obligación de mantener un registro de los contratos que otorguen, como también deben remitir copia de éstos a la Oficina del Contralor.[3] A estos efectos, dicha sección dispone:

> Las entidades gubernamentales y las entidades municipales del Estado Libre Asociado de Puerto Rico, sin excepción alguna, mantendrán un registro de todos los contratos que otorguen,

---

[3] Dicha enmienda dispone, en lo pertinente, que no remitir un contrato municipal a la Oficina del Contralor "no será causa para que un tribunal competente declare la nulidad de cualquier contrato o negocio jurídico legalmente válido." Quiere decir que dicho requisito es subsanable. "Sólo si ello no ocurre, presumiblemente, cabría hablar de la anulación del contrato." Colón Colón v. Municipio de Arecibo, res. el 28 de marzo de 2007, 2007 TSPR 61.

>  incluyendo enmiendas a los mismos, y deberán remitir copia de éstos a la Oficina del Contralor dentro de los quince (15) días siguientes a la fecha de otorgamiento del contrato o de la enmienda.

Reiteradamente hemos resuelto que para que los contratos otorgados por los municipios sean válidos, es indispensable que el contrato conste por escrito; que se mantenga un registro fiel que establezca la existencia del contrato; que se acredite la certeza de tiempo, esto es, que se llevó a cabo y se otorgó quince días antes y que se remita copia del contrato a la Oficina del Contralor, salvo determinadas excepciones. Cordero Vélez v. Municipio de Guánica, res. el 12 de febrero de 2007, 2007 TSPR 24; CMI Hospital Equipment Corp. v. Departamento de Salud, res el 30 de mayo de 2007, 2007 TSPR 99; Ocasio v. Alcalde Mun. De Maunabo, 121 D.P.R. 37 (1988).

Una vez se cumplen los requisitos anteriormente expuestos, los contratos son válidos y exigibles y gozan de la publicidad requerida por nuestro ordenamiento jurídico para la sana administración de la política pública en cuanto a la contratación municipal se refiere. Ello significa que el cumplimiento con los referidos requisitos valida las asignaciones de fondos hechas para los contratos municipales dentro del presupuesto del Municipio para cada año fiscal.

En cuanto al desembolso de fondos municipales, el artículo 8.004 de la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4354, dispone, en lo pertinente:

Las obligaciones y desembolsas [sic] de fondos públicos municipales sólo podrán hacerse para obligar o pagar servicios, suministros de materiales y equipo, reclamaciones o cualesquiera otros conceptos autorizados por ley, ordenanza o resolución aprobada al efecto y por los reglamentos adoptados en virtud de las mismas.

(a) Los créditos autorizados para las atenciones de un año fiscal específico serán aplicados exclusivamente al pago de gastos legítimamente originados e incurridos durante el respectivo año, o al pago de obligaciones legalmente contraídas y debidamente asentadas en los libros del municipio durante dicho año.

(b) No podrá gastarse u obligarse en año fiscal cantidad alguna que exceda de las asignaciones y los fondos autorizados por ordenanza o resolución para dicho año. Tampoco se podrá comprometer, en forma alguna, al municipio en ningún contrato o negociación para pago futuro de cantidades que excedan a las asignaciones y los fondos. Estarán excluidos de lo dispuesto en este inciso los contratos de arrendamiento de propiedad mueble e inmueble y de servicios.

Por ende, y a tenor con el artículo citado, un municipio por lo general no puede pactar el pago futuro de cantidades en exceso de la asignación presupuestada para un contrato en particular. Ello no obstante, a manera de excepción, si un contrato es de arrendamiento de propiedad mueble o inmueble o es un contrato de servicios, los municipios sí pueden pactar un pago futuro que exceda la asignación original respecto a ese contrato.

Finalmente, resulta pertinente señalar que "cuando se trata de contratos municipales regidos especialmente por la Ley de Municipios Autónomos, la validez de los mismos tiene que determinarse considerando las disposiciones pertinentes a este estatuto especial, y no a la luz de la

teoría general de obligaciones y contratos del Código Civil." Colón Colón v. Municipio de Arecibo, ante; Cordero Vélez v. Municipio de Guánica, ante; Mun. de Ponce v. A.C. et al., 153 D.P.R. 1 (2000).


B

En el caso ante nuestra consideración no existe controversia alguna en cuanto a la validez del contrato suscrito entre J&J y el Municipio de San Juan. Dicho contrato cumple cabalmente con todos los requisitos en cuanto a la contratación municipal según hemos requerido reiteradamente. De hecho, el Municipio recurrido así lo reconoce.

Ello no obstante, el Municipio arguye, básicamente, que no se cumplió con la condición incluida en la cláusula sobre pruebas en exceso. Al respecto, alega que no se efectuó una orden de compra por separado, como requería la cláusula y que, además, ello conllevaba realizar una enmienda al contrato original, sujeta a los requisitos de contratación municipal, lo cual no ocurrió. Por ende, según el Municipio, como no existe asignación presupuestada para la deuda en exceso, la cláusula es nula y la deuda no es exigible.

Al acoger los planteamientos del Municipio, el Tribunal de Apelaciones sostuvo:

> En este caso la relación contractual entre las partes requería las órdenes de compra por separado y, naturalmente, éstas tienen que emitirse por escrito a través de las personas

autorizadas para ello. Es de esta manera que se puede constatar, verificar, auditar y controlar el uso de fondos públicos de manera que los desembolsos estén conforme a las obligaciones incurridas y a los fondos disponibles.

No estamos de acuerdo. Primeramente, como reseñáramos, el contrato cumplió con todos los requisitos que exige nuestro ordenamiento jurídico en lo que a la contratación municipal se refiere. Siendo ello así, sólo resta examinar la cláusula en controversia para determinar si lo pactado es válido conforme a la Ley de Municipios Autónomos.

J&J y el Municipio pactaron que cada prueba en exceso del máximo de 600,000 sería a razón de treinta y tres centavos y que éstas se adquirirían mediante órdenes por separado. Específicamente, la cláusula dispone: "Purchase over 600,000 tests will be at $0.33 and should be purchase [sic] on separate orders." No hay duda que las partes pactaron que de hacerse pruebas en exceso, se cobraría por ello.

Ahora bien, el Municipio sostiene que no se cumplió con la segunda parte de la cláusula que dispone que las pruebas en exceso deben adquirirse mediante órdenes por separado. Sabido es que en materia de interpretación de los contratos, nuestro ordenamiento civil establece que "si los términos de los contratos son claros y no dejan duda sobre la intención de los contratantes, se atenderá al sentido literal de sus cláusulas." 31 L.P.R.A. sec. 3471; CNA Casualty of P.R. v. Torres Díaz, 141 D.P.R. 27

(1996). Al respecto hemos resuelto que términos claros son "aquellos que por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión, razonamientos o demostraciones susceptibles de impugnación". Sucn. Ramírez v. Tribunal Superior, 81 D.P.R. 357 (1959).

Una lectura de la cláusula en cuestión es todo lo que se necesita para concluir que ésta es clara y no impone condiciones más allá de su fiel interpretación. La cláusula sólo le impone a J&J el deber de ordenar por separado las pruebas en exceso. Aparte de dicho requisito, la cláusula no especifica cómo se tenían que ordenar las pruebas. Ello quiere decir que cuando la persona facultada por el Municipio firmó el contrato, autorizó a que, de ser necesario, el Municipio ordenara pruebas en exceso de las 600,000 incluidas en el contrato independientemente de cómo las ordenara.

Lógicamente, si el contrato sólo disponía para la realización de un máximo de 600,000 pruebas, para llevar a cabo pruebas en exceso de dicho número había que ordenar más reactivos. Obviamente, cada vez que se ordenaron reactivos para llevar a cabo pruebas en exceso, éstas constituían órdenes por separado. De otra manera, hubiese sido imposible llevar a cabo más pruebas de las pactadas.

Como prueba de lo anteriormente expuesto, surge del expediente que el Municipio ciertamente ordenó las pruebas

en exceso. Mediante misiva de 30 de junio de 1999, la Lcda. Nyrma Colón, Directora de Servicios de Laboratorio del Hospital Municipal de San Juan, le remitió a las Lcdas. Carmen Graulau, Administradora de la Oficina Ejecutiva de Salud del Municipio de San Juan, y Maritza Espinoza, Directora Ejecutiva del Hospital Municipal de San Juan, la factura de J&J por los reactivos ordenados en exceso. Dicha carta expresa, en lo pertinente: "Adjunto factura de la Compañía Johnson & Johnson por concepto de exceso de reactivos pedidos en el año a los términos del contrato." (Énfasis suplido).

Es forzoso concluir, entonces, que cónsono con la cláusula incluida en el contrato entre J&J y el Municipio, este último ordenó los reactivos en exceso por separado, tal y como se había pactado. No puede ahora el Municipio obviar lo que claramente había acordado con J&J para así burlar la deuda acumulada. Decidir de otra manera provocaría desconfianza y desconcierto entre los entes privados a la hora de contratar con los municipios, en abierta contravención a los postulados de nuestra política pública.

Ahora bien, ¿puede un Municipio obligarse al pago futuro de cantidades que excedan la asignación de un contrato en particular? La respuesta, de ordinario, es en la negativa. En cuanto a ello, el Inciso (b) del Artículo 8.004 de la Ley de Municipios Autónomos, ante, expresamente prohíbe que los municipios se comprometan

mediante contrato u otro tipo de negociación, al pago futuro de obligaciones que excedan a las asignaciones y a los fondos.

Ello no obstante, esta disposición exceptúa de dicha prohibición a los contratos de arrendamiento de propiedad mueble e inmueble y a los contratos de servicios. Por esta razón, el Municipio no puede argüir que no existía asignación para el exceso de las 600,000 pruebas provocando de esa manera la nulidad de la cláusula. Toda vez que el contrato cumplió con los requisitos para la contratación municipal, existía partida presupuestaria asignada. En vista de ello, la partida en exceso sí es exigible por J&J ya que el contrato de arrendamiento del equipo de laboratorio cae dentro de la excepciones pautadas en el Artículo 8.004 de la Ley de Municipios Autónomos, ante, a saber: es un contrato de arrendamiento de un bien mueble, esto es, de un equipo médico.

Dicho de otra manera, en el caso hoy ante nuestra consideración, no sólo las partes previeron que posiblemente se necesitaría ordenar pruebas en exceso de las incluidas en el contrato, sino que la ley mediante el artículo reseñado prevé que los contratos exceptuados, por su naturaleza, pueden resultar en un desembolso de fondos en exceso del presupuestado y asignado. Así pues, ciertamente, la cantidad adeudada por el Municipio a J&J es exigible.

Por los fundamentos antes expuestos, procede revocar la sentencia del Tribunal de Apelaciones. Concluimos que el Municipio de San Juan le adeuda a J&J $132,716.10 por concepto de 402,170 pruebas realizadas en exceso a treinta y tres centavos cada una. Procede, además, devolver el caso al Tribunal de Primera Instancia para que celebre vista en cuanto al canon de arrendamiento y la partida por materiales y mantenimiento del equipo de laboratorio alegadamente adeudados por el Municipio, según dicho foro correctamente lo ordenara.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Johnson & Johnson International Inc.

    Peticionario

       vs.                      CC-2006-208    *CERTIORARI*

Municipio de San Juan

    Recurrida

SENTENCIA

San Juan, Puerto Rico, a 19 de diciembre de 2007

Por los fundamentos expuestos en la Opinión que antecede, la cual forma parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Apelaciones. Concluimos que el Municipio de San Juan le adeuda a Johnson & Johnson International $132,716.10 por concepto de 402,170 pruebas realizadas en exceso a treinta y tres centavos cada una. Se devuelve el caso al Tribunal de Primera Instancia para que celebre vista en cuanto al canon de arrendamiento y la partida por materiales y mantenimiento del equipo de laboratorio alegadamente adeudados por el Municipio, según dicho foro correctamente lo ordenara.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez no intervino.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo