## En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| Natividad de Jesús Maldonado y Otros Demandantes–Recurridos .V Corporación Azucarera de Puerto Rico Demandada–Peticionaria | Certiorari **98TSPR84** |

Número del Caso: **CC–97–459**

Abogados Parte Demandante: Recurrida:

    Lcdo. José Alberty Orona

Abogados Parte Demandada: Peticionaria:

    Lcdo. Dickson Ortiz Maiz

Abogados Parte Interventora:

Tribunal de Instancia: Superior Sala de Guayama

Juez del Tribunal de Primera Instancia:

    Hon. Dante Amadis Rodríguez Sosa

Tribunal de circuito de Apelaciones:

    **Caguas, Humacao, Guayama**

Juez Ponente:

    Panel sustituto integrado por su presidenta, **Juez Pesante Martínez** y los **Jueces señores Colón Birriel** y **Rivera Pérez**

Fecha: 6/29/1998

Materia:

        Este documento constituye un documento
        oficial del Tribunal Supremo que está sujeto

a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Natividad De Jesús

Maldonado y otros

Demandantes-recurridos

  v.

CC-97-459 Certiorari

Corporación Azucarera de P.R.

Demandada-peticionaria

**PER CURIAM**

San Juan, Puerto Rico, a 29 de junio de 1998

**I**

A raíz del cierre de la Central Aguirre, ubicada en el Municipio de Salinas, Natividad De Jesús Maldonado y cincuenta y cuatro (54) empleados regulares y administrativos no unionados de la Corporación Azucarera de Puerto Rico, presentaron demanda sobre salarios y otros beneficios marginales. Reclamaron unas cantidades indeterminadas por el período de diez (10) meses a partir del 1ro de marzo de 1991 hasta el 31 de diciembre de 1991, en concepto de: (1) salarios; (2) vacaciones por enfermedad hasta un máximo de noventa (90) días; (3) vacaciones regulares; (4) aportaciones al plan médico; (5)

aumento salarial de $60.00 mensuales, cubriendo los meses de enero y febrero de 1991, reconocídole retroactivamente a otros trabajadores no unionados de igual categoría que continuaron trabajando para la Corporación Azucarera después del 28 de febrero de 1991; (6) aumento de treinta ($0.30) centavos por hora para los años 1981-1982; y (7) $500.00 de bono navideño. Estimaron en no menos de **$20,000.00 las cuantías adeudadas a cada uno.**

Luego de varios incidentes y trámites procesales, De Jesús Maldonado, et al., solicitaron sentencia denominada **Sentencia Sumaria Parcial**. Posteriormente, la Corporación Azucarera replicó pidiendo igual remedio a su favor. En esa etapa quedó delimitada la controversia a determinar si De Jesús Maldonado, et al., como empleados regulares y administrativos de la Corporación Azucarera, **tenían derecho a los mismos salarios y beneficios marginales que con motivo del cierre de la Central Aguirre fueron concedídoles**, **mediante estipulación acordada con el Sindicato de Obreros Unidos del Sur de P.R., a todos los trabajadores unionados cubiertos por convenios colectivos**.

Así las cosas, el 25 de marzo de 1997 el Tribunal de Primera Instancia, Sala Superior de Guayama (Hon. Dante Amadis Rodríguez Sosa), dictó **Sentencia Sumaria**. Resolvió que, De Jesús Maldonado, et al., tenían derecho a recibir **el mismo trato que se les dio a los trabajadores unionados**. Fundamentó su dictamen con el Art. 7 del Código Civil, 31 L.P.R.A. sec. 7, el uso y costumbre establecido por la propia Corporación, el Convenio Colectivo que cubría los años 1989, 1990 y 1991, las Estipulaciones de 1989 y 1990, las doctrinas de actos propios, buena fe y enriquecimiento injusto. Por consiguiente, decretó que la Corporación Azucarera venía obligada a pagarles por el período correspondiente al 1ro de marzo de 1991 hasta el 31 de diciembre de 1991 (10 meses), los siguientes beneficios: (1) salarios; (2) vacaciones por enfermedad hasta un máximo de noventa (90) días; (3) vacaciones regulares; (4) aportaciones al plan médico; y (5) bono navideño de $500.00. Les negó el reclamo sobre aumento salarial de $60.00 cubriendo los meses de enero y febrero de 1991 y aumento de treinta ($0.30) centavos por hora para los años de 1981 y 1982, a base de que su concesión constituiría extender las expectativas que tenían en relación a los trabajadores unionados.

En lugar de señalar vista evidenciaria para dilucidar las cuantías de salarios y demás beneficios a que eran acreedores, el Juez Dante Amadis Rodríguez Sosa confeccionó un "trámite ejecutivo" **particular**. Ordenó, una vez "final, firme y ejecutoria" su Sentencia, que cada parte le sometiera en diez (10) días el nombre de un contador público autorizado, quien lo representaría en la liquidación de la sentencia. Como encomienda dispuso que ambos contadores determinarían la suma específica de dinero en concepto de los salarios y demás beneficios marginales reconocidos. Indicó además, que en caso de que ambas partes incumplieran lo ordenado, nombraría un contador público autorizado para realizar dicha liquidación. El informe que se le suministrara al tribunal sería final y obligatorio para ambas

partes. Por último señaló, que cualquier acuerdo de liquidación de la sentencia entre las partes dispensaría el trámite ejecutivo antes impuesto. El archivo en autos de copia de notificación de dicha sentencia se realizó el 26 de marzo de 1997. Aunque nominada Sentencia Sumaria, el boleto de notificación suscribe que se "ha dictado sentencia... debidamente registrada y archivada en los autos de este caso." También advierte del derecho a **apelación**.

Oportunamente, el 4 de abril, la Corporación Azucarera solicitó enmiendas o determinaciones adicionales de hechos y de derecho bajo la Regla 43.3 de Procedimiento Civil. Fue denegada mediante resolución notificada el 16 de abril.

Inconforme, la Corporación Azucarera presentó recurso de **apelación** ante el Tribunal de Circuito de Apelaciones el 16 de mayo. De Jesús Maldonado, et al., solicitaron su desestimación. Adujeron que la solicitud de determinaciones adicionales de hecho y de derecho interpuesta por la Corporación era improcedente, toda vez que la Regla 43.2(a) de Procedimiento Civil, establecía que cuando se emitía una sentencia sumaria no era necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho. Sostuvieron que tal solicitud no surtió efecto interruptor sobre el plazo para apelar y el recurso era fatalmente tardío.

El 3 de julio, el Tribunal de Circuito de Apelaciones (Hons. Pesante Martínez, Colón Birriel y Rivera Pérez), **por distinto fundamento** denegó el auto solicitado. Resolvió que el dictamen recurrido era **interlocutorio**, no final, toda vez que el tribunal de instancia dejó pendiente de adjudicar la cuantía de salarios y demás beneficios. A su juicio, el recurso apropiado era el certiorari y la solicitud de determinaciones adicionales de hechos y de derecho no detuvo el plazo para acudir en alzada.

Consignó que su dictamen era "sin perjuicio de que cuando se adjudique la totalidad de la controversia, se acuda ante este foro mediante el recurso de apelación."

A solicitud de la Corporación Azucarera revisamos.

## II

Evaluaremos conjuntamente el primer y segundo señalamiento de error. La Corporación Azucarera sostiene que la sentencia del tribunal de instancia fue **final** por disponer de la totalidad de las reclamaciones establecidas por todos los demandantes, por lo

que su solicitud de determinaciones adicionales de hecho y de derecho, interrumpió el plazo para apelar. **No tiene razón.**

La Regla 43.1 de Procedimiento Civil define el término "sentencia", como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Reiteradamente hemos resuelto que si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las controversias entre las partes, la misma es una **sentencia final** de la cual pueda interponerse recurso de apelación. <u>A.F.F.</u> v. <u>Tribunal</u>, 93 D.P.R. 903 (1967); <u>Arroyo</u> v. <u>Quiñones</u>, 77 D.P.R. 513 (1954). En <u>Rodríguez</u> v. <u>Tribunal Municipal</u>, 74 D.P.R. 656, 664 (1953) explicamos así la diferencia entre una resolución y una sentencia:

> "No es muy difícil concluir que existe una diferencia conceptual categórica entre una 'resolución' y una 'sentencia'. Ninguna de la dos constituyen un término genérico dentro del cual pueda entenderse comprendida la otra específicamente. Una resolución pone fin a un incidente dentro del proceso judicial, **mientras una sentencia pone fin a la controversia entre las partes mediante una adjudicación final**. Existe además entre ambas una diferencia en la práctica seguida para la notificación. Cuando se trata de una resolución, el tribunal notifica a las partes sin advertirles de su derecho a apelación. **Cuando se trata de una sentencia, el secretario le notifica a las partes sobre la adjudicación final, su derecho a apelar, y la fecha exacta del archivo de dicha notificación en los autos, que es la que determina desde cuándo empieza a correr el término para apelar.**" (Énfasis nuestro).

### III

Al aplicar la normativa al caso de autos, forzoso

concluir que la Sentencia Sumaria del tribunal de instancia no fue una sentencia final. Examinemos inicialmente este aspecto.

**Primero**, ciertamente la misma decretó claramente cuáles reclamaciones procedían en derecho. De las siete (7) reclamaciones formuladas por De Jesús Maldonado, et al., cinco

(5) fueron adjudicadas a favor de éstos. Las restantes dos (2) –aumento de salario de $60.00 para los meses de enero y febrero de 1991 y de $0.30 por hora para los años 1981 y 1982–, fueron dictaminadas improcedentes en derecho. En **su denominada Sentencia Sumaria** únicamente indicó que la Corporación Azucarera venía obligada a pagarle por el período correspondiente de diez (10) meses desde el 1ro de marzo de 1991, los beneficios relacionados a salarios, licencia de vacaciones regulares y por enfermedad, aportaciones al plan médico y el bono de navidad. Fijó en términos generales cómo debían computarse tales beneficios, a saber, según los salarios y beneficios que recibía cada uno de ellos al momento del cierre de la Central Aguirre. **Sin embargo, basado en ese trámite de liquidación, no señaló ninguna vista evidenciaria o procedimiento adversativo para dilucidar las controversias sobre las cantidades específicas adeudadas**. En otras palabras, el Tribunal nada dispuso sobre las cuantías de que eran acreedores conforme esos beneficios.

**Segundo**, aunque la "Sentencia Sumaria" no expresa que sea parcial, evidentemente quedó pendiente de adjudicar las cuantías específicas para cada uno de los cincuenta y cinco (55) demandantes. Coincidimos pues, con el foro apelativo. La falta de cómputo y liquidación de las cantidades que representan los derechos determinados por el tribunal de instancia, revela que el dictamen era de **naturaleza parcial**. Si bien se adjudicó en la sentencia la procedencia en derecho de lo solicitado por el período de tiempo especificado, serán los récords de nóminas y expedientes de personal, así como la evidencia que las partes posean y produzcan sobre sus salarios y beneficios al momento del cierre, la prueba que precisará la extensión de tales cuantías. Salvo una estipulación o transacción, sería indispensable desfilar prueba documental, testifical (o pericial) para determinar las cantidades exactas. Nada varía el hecho de que sean conocidos los salarios y beneficios originales que gozaban los empleados al momento del cierre de la Central Aguirre. Tampoco varía el resultado que las solicitudes podrían determinarse mediante cálculos matemáticos.

**Tercero**, la pretendida función delegada a los contables designados por las partes o, de no llegarse a un acuerdo, al contador público autorizado a ser nombrado por el tribunal, sustituiría el trámite clásico de vista evidenciaria ante el Tribunal. Bajo cualquier vía adjudicativa, **sin prueba ni estipulación**, no puede realizarse la operación técnica del cómputo de los salarios y beneficios. De particular relevancia, –**aunque ninguna de las partes lo discuten**– es la Regla 41.2 de Procedimiento Civil que por excepción autoriza al Tribunal a

designar un Comisionado Especial en cualquier **caso o procedimiento pendiente** "cuando estuvieren envueltas cuestiones sobre cuentas y cómputos difíciles de daños". En su sustrato, percibimos el "trámite ejecutivo" como una variante implantada por el tribunal de instancia bajo el esquema de Comisionado Especial de la Regla 41. Nada en las Reglas procesales impide, que en circunstancias meritorias, la selección se canalice a través de un trámite en que las partes puedan sugerir al Tribunal uno o más nombres de personas cualificadas y potencialmente designables. Ahora bien, como norma, la Regla visualiza un (1) solo Comisionado Especial. En el fondo, el tribunal de instancia optó por obligar a las partes a transigir o delegó esa función a un contador público con el fin de recibir la prueba y realizar los cómputos.

**Cuarto**, la normativa vigente exige que una sentencia final adjudique **todas** las controversias entre las partes. La cuantificación del remedio es de naturaleza adjudicativa que requiere en alguna etapa la sanción de un tribunal. Al bifurcar el procedimiento y delegar la adjudicación final del remedio a un contador público, no se eliminaron todas las controversias. Aunque el Tribunal quisiese dar luces de finalidad al Informe posterior, no podría impedir que se suscitaran controversias sobre los cómputos, la elección del contador público o los procedimientos envueltos. Si esto ocurriera, ¿podría la parte afectada presentar una segunda apelación? Los procedimientos durante el "trámite ejecutivo" ¿serían post-sentencia? Sólo al cuantificarse la indemnización apropiada de un demandante particular se acaba su reclamo.

**Quinto**, a pesar de llamar el procedimiento "ejecutivo", la verdad es que la sentencia no era ejecutable. No se puede exigir una cantidad o remedio que no haya sido especificada. Más aún, hasta que no se apruebe el Informe por el Tribunal de Primera Instancia no existirá una reclamación materializada que tenga eficacia jurídica.

IV

En resumen, la llamada "Sentencia Sumaria" no puso fin a todas las controversias, por lo que **no estaba disponible el recurso de apelación** en esa etapa. La oportuna interposición de la solicitud de determinaciones de hecho y de derecho formulada por la Corporación Azucarera no varió su naturaleza interlocutoria ni interrumpió el término. Andino v. Topeka, res. en 10 de abril de 1997. Aunque la Corporación Azucarera alega que las expresiones del Tribunal de Primera Instancia pudieron haber

causado confusión, la normativa esbozada derrota cualquier argumento de que procedía una apelación.

Por los fundamentos expuestos, se dictará Sentencia **confirmando** la resolución del Tribunal de Circuito de Apelaciones que denegó la apelación de la Corporación Azucarera, bajo el fundamento de que el recurso apropiado era un certiorari presentado tardíamente. Se ordena que continúen los procedimientos en el Tribunal de Primera Instancia.

## EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Natividad De Jesús

Maldonado y otros

Demandantes-recurridos

   v.

CC-97-459 Certiorari

Corporación Azucarera de P.R.

Demandada-peticionaria

### SENTENCIA

San Juan, Puerto Rico, a 29 de junio de 1998

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente, se dicta Sentencia y confirma la resolución del Tribunal de Circuito de Apelaciones que denegó la apelación de la Corporación Azucarera, bajo el fundamento de que el recurso apropiado era un certiorari presentado tardíamente. Se ordena que continúen los procedimientos en el Tribunal de Primera Instancia.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón y el Juez Asociado señor Hernández Denton concurren en el resultado sin opinión escrita.


Isabel Llompart Zeno

Secretaria del Tribunal Supremo

Retornar al índice anterior