

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Peerless Oil & Chemical, Inc.<br><br>        Peticionaria<br><br>             v.<br><br>Hermanos Torres Pérez, Inc.<br>        Demandados<br><br>Víctor Torres Oliveras, Hilda Pérez Souchet y    la Sociedad Legal de Gananciales compuesta por ambos; Víctor Torres Pérez, Annette Fuster Padilla y   la Sociedad Legal de Gananciales compuesta por ambos; Germán Rivera Colón, Wanda Torres Pérez y la Sociedad Legal de Gananciales compuesta por ambos; Luis Vélez Santiago, María Torres Pérez y la Sociedad Legal de Gananciales compuesta por ambos; Hilda Torres Pérez<br><br>        Recurridos | Certiorari<br><br>2012 TSPR 119<br><br>186 DPR ____ |

Número del Caso: CC-2011-532

Fecha: 13 de julio de 2012

Tribunal de Apelaciones:

        Región Judicial de Ponce

Abogados de la Parte Peticionaria:

                Lcdo. Luis Sanchez Betances
                Lcda. Maileidy Gómez Germán

Abogados de la Parte Recurrida:

                Lcdo. José Ramírez Ramos
                Lcdo. José Cepeda Rodríguez

Materia: Quiebra – Efecto de una presentación de quiebra sobre los codeudores.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Peerless Oil & Chemical, Inc.<br><br>        Peticionaria<br><br>            v.<br><br>Hermanos Torres Pérez, Inc.<br>        Demandados<br><br>Víctor Torres Oliveras, Hilda Pérez Souchet y la Sociedad Legal de Gananciales compuesta por ambos; Víctor Torres Pérez, Annette Fuster Padilla y la Sociedad Legal de Gananciales compuesta por ambos; Germán Rivera Colón, Wanda Torres Pérez y la Sociedad Legal de Gananciales compuesta por ambos; Luis Vélez Santiago, María Torres Pérez y la Sociedad Legal de Gananciales compuesta por ambos; Hilda Torres Pérez<br><br>        Recurridos | CC-2010-1087 |

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES

En San Juan, Puerto Rico, a 13 de julio de 2012.

Comparece ante nos Peerless Oil & Chemicals, Inc. (POC), y solicita la revisión de la sentencia que emitió el Tribunal de Apelaciones, en la cual revocó la sentencia del Tribunal de Primera Instancia que condenó a los Hermanos Torres Pérez, Inc. (HTP) y a varios accionistas de esa corporación -como garantizadores solidarios- a pagar $148,054.69 en concepto de intereses por mora. El foro

apelativo intermedio fundamentó su contención en que el Tribunal de Primera Instancia carecía de jurisdicción para atender la controversia, luego que HTP presentó una petición de quiebra.

En reiteradas ocasiones hemos manifestado que la presentación de una petición de quiebra por un codeudor, fiador o garantizador de una deuda no afecta las obligaciones que frente a esa misma deuda tengan otros codeudores, garantizadores o fiadores. Sin embargo, nunca antes hemos precisado si, en tiempo para apelarse una sentencia, la petición de quiebra instada por un quebrado suspende el término que tienen las otras partes para revisarla aun cuando haya una orden del tribunal que paraliza sus efectos postsentencia.

El presente recurso nos permite determinar qué efecto tiene sobre los términos de apelación la presentación de una petición de quiebra por un solo deudor en un caso en que existen varios garantizadores solidarios de la misma deuda. Evaluada la controversia, resolvemos que los garantizadores solidarios de una deuda deben apelar la determinación conforme disponen las leyes y los reglamentos correspondientes, pues de lo contrario la sentencia u orden se convierte en final y firme. Como se sabe, la presentación de una petición de quiebra solo paraliza los procedimientos contra el deudor que la presentó. Por eso, revocamos al foro apelativo intermedio por falta de jurisdicción.

I

POC es una corporación que se dedica al almacenamiento y venta de derivados de petróleo. Por su parte, HTP es una corporación dedicada a la compra, venta y distribución de productos derivados del petróleo por acarreo.

El 29 de agosto de 2008 POC presentó una demanda en cobro de dinero contra HTP y los siguientes accionistas: Sr. Víctor Torres Oliveras, Sra. Hilda Pérez Souchet y la sociedad de bienes gananciales compuesta por ambos; Sr. Víctor Torres Pérez, Sra. Annette Fuster Padilla y la sociedad legal de bienes gananciales compuesta por ambos; Sr. Germán Rivera Colón, la Sra. Wanda Torres Pérez y la sociedad legal de bienes gananciales compuesta por ambos y; el Sr. Luis Vélez Santiago, la Sra. María Torres Pérez y la sociedad legal de bienes gananciales compuesta por ambos. Les reclamó una deuda de $4,180,366.92 por concepto de venta de productos más intereses por mora, según pactados. Esa cantidad cubre diecinueve facturas de productos derivados de petróleo que POC vendió a HTP. Específicamente, la responsabilidad de los recurridos surgía de unas garantías personales que cada uno de ellos firmó en que se responsabilizaban solidariamente del pago de cualquier suma adeudada por HTP a POC.[1]

_____

[1] Las garantías leen como sigue:

"Garantía personal y Autorización para Investigar

Queda expresamente entendido y acordado que el abajo firmante garantiza solidariamente, en su carácter personal, el pago de cualquier suma adeudada por Hermanos Torres Pérez

En la demanda, POC alegó que durante años ha vendido a HTP derivados de petróleo, como gasolina y diesel, para ser revendido a cuatro estaciones de servicio de su propiedad y a otras seis estaciones propiedad de sus accionistas. Los términos de venta establecidos eran a crédito otorgando de siete a diez días para pagar las facturas. Explicó que luego de un tiempo, HTC comenzó a atrasarse en el pago de las facturas de los productos vendidos. Ello se debía a que varios accionistas, oficiales y directores de HTP compraban productos para sus estaciones de servicio y luego no pagaban. Así las cosas, solicitó que se condenara a HTP y a los recurridos al pago de la suma adeudada, más gastos de honorarios de abogados por temeridad, así como la concesión del remedio provisional de embargo como aseguramiento de sentencia conforme a la Regla 56.3 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III.

---

a Peerless Oil & Chemicals, Inc., incluyendo los intereses aplicables, costos de cobranza y gastos legales. Reconocemos que Peerless podrá cobrar cualquier cantidad adeudada y no pagada sin antes tener que cobrar del deudor primario. Aceptamos, según aplique, todos los términos antes indicados. Renunciamos a ser notificados de cualquier enmienda a los términos de pago u otros acuerdos entre el deudor primario y Peerless Oil & Chemicals, Inc. No será necesario que Peerless proceda contra otras garantías o colaterales provistas por o a beneficio del deudor primario antes de solicitarnos el pago, judicial o extrajudicialmente.

Autorizamos a Peerless Oil & Chemicals, Inc. a obtener información de crédito sobre los suscribientes garantizadores. Reconocemos que Peerless Oil & Chemicals, Inc. podrá notificar a las agencias de crédito la experiencia de crédito de nuestra cuenta".

En la contestación a la demanda, HTP y los recurridos aceptaron los números de las facturas, pero negaron sus cuantías por falta de información. Asimismo, admitieron que acumulaban una deuda con POC de más de cuatro millones de dólares. Posteriormente, POC presentó una demanda enmendada en la que repitió los mismos argumentos que esbozó en la primera, pero aclaró que la deuda acumulada por los recurridos era hasta el momento de $3,364,240.12, más intereses por mora según pactados, además de intereses legales y honorarios de abogado.

POC presentó una moción de sentencia sumaria parcial. En esta solicitó al tribunal que condenara a HTP al pago de $3,122,261 por las compras a crédito que adeudaba. En su oposición, HTP y los recurridos sostuvieron que no hay controversia acerca de la cantidad adeudada, pero sí de la legalidad de las facturas. Fundamentaron su contención en las disposiciones de las siguientes leyes: *Ley de Gasolina*, Ley Núm. 73 de 23 de junio de 1978, 23 L.P.R.A. sec. 1131 *et seq.*; la *Ley de Control de Productores, Refinadores y Distribuidores Mayoristas de Gasolina*, Ley Núm. 3 de 21 de marzo de 1978, según enmendada, 23 L.P.R.A. sec. 1101, *et seq.*; y la *Ley de Monopolios y Restricciones de Comercio*, Ley Núm. 77 de 25 de junio de 1964, según enmendada, 10 L.P.R.A. sec. 257, *et seq.* En síntesis, arguyeron que el Departamento de Justicia presentó una querella contra POC ante el Departamento de Asuntos del Consumidor (DACo) en la que le acusó de violar las disposiciones del Art. 4 de la

Ley Núm. 3, supra, 23 L.P.R.A. sec. 1108, al otorgar precios de venta distintos a sus compradores. A esa moción, POC replicó y alegó que los recurridos pretendían inducir a error al Tribunal y dilatar los procedimientos para no pagar lo que correspondía. Asimismo, resaltaron que no existía controversia sobre la cuantía debida, ya que HTP la estipuló y aceptó. Concluyeron que la única controversia a resolverse era en cuanto a las partidas de intereses por mora.

En el informe de conferencia con antelación a juicio, POC, HTP y los recurridos expusieron, en esencia, los mismos argumentos. En específico, HTP y los recurridos sostuvieron que las garantías personales que brindaron los accionistas de la corporación no fueron dadas voluntariamente ya que su consentimiento estuvo viciado. Afirmaron que cuando los accionistas firmaron esas garantías, lo hicieron bajo la promesa de que POC continuaría supliéndoles productos para generar flujo de efectivo y pagar las facturas vencidas.

El Tribunal de Primera Instancia dictó sentencia parcial. En esta declaró con lugar la demanda, pero únicamente en lo referente al principal de la deuda. Condenó a HTP a pagar $3,122,261 con intereses legales desde la radicación de la demanda hasta su saldo total, honorarios de abogados computados a razón del diez por ciento (10%) de la totalidad de la deuda, más las costas y gastos del pleito. Añadió, que la única controversia pendiente era la cuantía de los intereses por mora.

Inconformes con el dictamen, HTP y los ahora recurridos acudieron al Tribunal de Apelaciones. Ese foro confirmó la determinación del foro primario. Concluyó, además "que las alegaciones de que se ejerció presión e intimidación a los accionistas en su carácter personal para la compra de combustible a crédito, son hechos impertinentes a dilucidar en la demanda instada por POC". Apéndice, pág. 108. Dijo esto porque la reclamación de POC a HTP era en términos de su deuda y no en contra de sus accionistas en su carácter personal y como garantizadores de la deuda. Por ello, razonó que la teoría de la intimidación argüida por los aquí recurridos ignoraba la sana práctica comercial que protege al suplidor. Asimismo, añadió que aceptarla obligaría a POC a suministrar el producto sin recibir su retribución a cambio. Finalmente, razonó que la querella no tenía relación sustancial con los negocios y contratos de las partes litigantes como mayoristas, ni cuestionan su validez jurídica y la deuda reclamada.

Posteriormente, se celebró juicio para dilucidar los intereses por mora. El 28 de septiembre de 2009 el foro primario dictó sentencia, copia de cuya notificación se archivó en autos el 2 de octubre del mismo año, y condenó a HTP y a los recurridos al pago de $148,054.69 por ese concepto.

Trabada así la controversia, el 19 de octubre de 2009 HTP presentó una moción en que solicitó que se dejara sin efecto la sentencia. En ella, indicó que el 7 de julio de

2009 instó una petición de quiebra al amparo del Capítulo 11 de la Ley de Quiebras, que paralizaba todos los procedimientos. Véase, 11 U.S.C.S. secs. 1107-1174. Cabe señalar que HTP no notificó de la presentación de la petición de quiebra a POC ni al tribunal hasta la presentación de la moción de relevo de sentencia el 19 de octubre de 2009. Se sometió al procedimiento de quiebra. Ninguno de los accionistas garantizadores, es decir los recurridos, se han sometido al proceso de quiebra hasta el momento.

De conformidad con lo anterior, el 23 de octubre de 2009 el Tribunal de Primera Instancia emitió una resolución, notificada el 13 de noviembre de 2009, en que paralizó el caso para propósitos de los asuntos postsentencia. En la resolución, el foro primario expresó que se reservaba "jurisdicción para decretar su reapertura, a solicitud de parte interesada, en caso que dicha orden de paralización emitida por el Tribunal de Quiebra sea dejada sin efecto en cualquier momento con posterioridad a la fecha de la presente resolución y la parte interesada acuda ante este foro solicitando la continuación de los procedimientos". Apéndice, pág. 121.

El 9 de diciembre de 2009 POC presentó una moción para reabrir el caso al amparo de la Regla 51.7 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. Arguyó que la obligación contractual por la que se radicó el caso en cobro de dinero tiene una serie de garantizadores solidarios que no están

acogidos al procedimiento de quiebra. Por consiguiente, tienen la obligación de responder por su cumplimiento. El 22 de enero de 2010 el Tribunal de Primera Instancia emitió una orden en que autorizó la reapertura del pleito respecto a los accionistas de HTP y permitió la toma de deposición.

Insatisfechos, los recurridos acudieron al Tribunal de Apelaciones. En esencia, atribuyeron al foro primario errar al impedir la presentación de prueba sobre el supuesto vicio del consentimiento de los accionistas al momento de obtenerse sus garantías personales. Por su parte, POC presentó una moción de desestimación por entender que el recurso era tardío. Explicó que los garantizadores solidarios no formaban parte de la solicitud de quiebra, por lo que la paralización de los procedimientos que decretó el foro primario no los cobijaba. Por ello, esbozaron que el recurso se presentó fuera del término de treinta días contados desde que se archivó en autos copia de la notificación de la sentencia.

El Tribunal de Apelaciones acogió el recurso como *certiorari*, lo expidió y revocó el dictamen del foro primario. Concluyó que el Tribunal de Primera Instancia erró al sostener la sentencia de 28 de septiembre de 2009, pues luego del 7 de julio de 2009, fecha en que HTP presentó su solicitud de quiebra, el tribunal local carecía de jurisdicción para tomar cualquier determinación en el pleito. Por ende, el foro apelativo determinó que la sentencia de 28 de septiembre de 2009 era nula. El Tribunal

de Apelaciones añadió que su sentencia anterior no era final y firme, pues los procedimientos contra HTP fueron paralizados desde la presentación de la petición de quiebra el 7 de julio de 2009. Por consiguiente, concluyó que cualquiera de las partes podía solicitar la reconsideración o recurrir oportunamente de ese dictamen. Por último, decretó que a pesar de que POC alega que los accionistas son deudores solidarios, la sentencia que condenó a HTP al pago de los $3,122,261 no los incluyó como deudores solidarios y además, no ha adquirido finalidad. Por ello, POC no podía requerirle a los accionistas sufragar la totalidad de la deuda antes de que la sentencia del Tribunal de Primera Instancia adviniera final y firme.

No conteste con esa determinación, el 15 de diciembre de 2010 POC recurrió ante nos. En su petición, atribuyó que el foro apelativo intermedio se equivocó (1) al asumir jurisdicción sobre un recurso de apelación que se presentó cinco meses tarde; (2) al acoger el recurso como *certiorari* cuando el dictamen apelado no constituía una resolución interlocutoria; (3) al determinar que POC no podía recobrar su acreencia a los recurridos por entender que no fueron incluidos en la sentencia parcial; (4) al determinar que POC no podía recobrar su acreencia directamente de los accionistas aun cuando estos son garantizadores solidarios y responden ante el acreedor aunque no medie sentencia en contra del deudor y; (5) al dejar sin efecto la sentencia en cuanto a los recurridos toda vez que la paralización

automática del proceso legal por la quiebra de uno de los codemandados no se extiende a los otros que no son parte de la petición de quiebra.

El 29 de abril de 2011 expedimos el auto. Le otorgamos un plazo a la parte recurrida para que presentara su alegato y le apercibimos que de no recibirse en el término dispuesto, el caso quedaría sometido sin su comparecencia. La parte recurrida nunca compareció. Así pues, con el beneficio de la comparecencia de la parte peticionaria y los documentos que obran en el expediente, procedemos a resolver.

II

A. La jurisdicción es el poder o autoridad que ostenta un tribunal para decidir casos o controversias. S.L.G. Solá-Moreno v. Bengoa Becerra, 182 D.P.R. 675, 682 (2011). Véanse, además, González v. Mayagüez Resort & Casino, 176 D.P.R. 848, 854 (2009); ASG v. Mun. San Juan, 168 D.P.R. 337, 343 (2006). La falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. Souffront v. A.A.A., 164 D.P.R. 663, 674 (2005). Por eso, es importante que las partes cumplan con los términos que dispone la ley para acudir en revisión de las sentencias y resoluciones.

En innumerables ocasiones "hemos advertido que los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen". S.L.G. Szendrey-Ramos v. F. Castillo, 169

D.P.R. 873, 882 (2007). Esto responde a que "las cuestiones relativas a la jurisdicción de un tribunal son privilegiadas y como tal deben atenderse y resolverse con preferencia a cualesquiera otras". Íd. Véase, además, Autoridad sobre Hogares v. Sagastivelza, 71 D.P.R. 436, 439 (1950). Ello es así porque "[u]na sentencia, dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho *y, por lo tanto, inexistente*". (Énfasis en el original.) Montañez v. Policía de Puerto Rico, 150 D.P.R. 917, 921 (2000). En otras palabras, cuando un tribunal determina que no tiene jurisdicción para entender en un asunto, procede la inmediata desestimación del recurso apelativo conforme lo ordenado por las leyes y reglamentos para el perfeccionamiento de estos recursos. S.L.G. Solá-Moreno v. Bengoa Becerra, supra, pág. 682. Véanse, además, Carattini v. Collazo Syst. Analysis, Inc., 158 D.P.R. 345, 355 (2003); Souffront v. A.A.A., supra, pág. 674.

Como la falta de jurisdicción de un tribunal no puede subsanarse, le corresponde a los foros adjudicativos examinar su propia jurisdicción, así como aquella del foro de donde procede el recurso ante su consideración. S.L.G. Szendrey-Ramos v. F. Castillo, supra, pág. 883. Recordemos que "[e]n numerosas ocasiones hemos expresado que este Tribunal tiene la responsabilidad de asegurarse que nuestro foro apelativo intermedio dispense justicia conforme al ámbito de autoridad que se le ha conferido estatutariamente". S.L.G. Szendrey-Ramos v. F. Castillo,

supra, pág. 883. Por ello, "[e]n el ejercicio de esta tarea, *cuando el Tribunal de Apelaciones asuma jurisdicción en un recurso sin tenerla, es nuestro deber así declararlo y desestimar el recurso*". (Énfasis en el original.) Íd. Véase, además, Morán v. Martí, 165 D.P.R. 356, 364 (2005).

B. En el ejercicio de su función revisora, el Tribunal de Apelaciones atiende sentencias parciales o finales, así como resoluciones y órdenes de carácter interlocutorio. La Regla 42.1 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V, define sentencia "como cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse".[2] Por otro lado, define la resolución como "cualquier dictamen que pone fin a un incidente dentro del proceso judicial".

En Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 656 (1987), indicamos que cuando un tribunal emite una sentencia, se adjudican las controversias habidas en un pleito y se definen los derechos de las partes. Es decir, "[e]l término sentencia se define como cualquier determinación del tribunal que resuelva finalmente la cuestión litigiosa… Esto es, que adjudique una reclamación entre las partes de la cual pueda apelarse". Cortes Pagán v. González Colón, Op. de 13 de marzo de 2012, 2012 T.S.P.R. 44, 2012 J.T.S. 57, 184 D.P.R. __ (2012). Véanse, además,

---

[2] La Regla 43.1 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, disponía en palabras parecidas que "el término `sentencia´ incluye cualquier determinación del Tribunal de Primera Instancia que resuelva finalmente la cuestión litigiosa de la cual pueda apelarse".

Abrams Rivera v. E.L.A., 178 D.P.R. 914, 926 (2010); Martínez v. Torres Ghigliotty, 175 D.P.R. 83, 94 (2008); U.S. Fire Ins. v. A.E.E., 151 D.P.R. 962, 967 (2000). Ello es así aunque la determinación haya sido titulada erróneamente como una resolución. Abrams Rivera v. E.L.A., supra, pág. 926; García v. Padró, 165 D.P.R. 324, 333 (2005); De Jesús v. Corp. Azucarera de P.R., 145 D.P.R. 899, 903 (1998).

Por el contrario, las resoluciones no adjudican definitivamente la totalidad de una reclamación, sino que "ponen fin a un incidente dentro del proceso judicial, ya sea antes o después de dictarse la sentencia". Cortes Pagán v. González Colón, supra. Véanse, además, Torres Martínez v. Torres Ghigliotty, supra, págs. 95-96; García v. Padró, supra, pág. 332.

C. Las disposiciones legales que establecen la jurisdicción y competencia del Tribunal de Apelaciones para atender recursos de apelación y de certiorari, están recogidas en la Ley de la Judicatura de 2003, Ley Núm. 103-2003, 4 L.P.R.A. secs. 24(t) y ss., en la Regla 52.2 de Procedimiento Civil, supra, y en las Reglas 13 y 32 del Reglamento del Tribunal de Apelaciones, 4 L.P.R.A. Ap. XXII-B.

El Art. 4.006 inciso (a) de la Ley de la Judicatura de 2003, supra, 4 L.P.R.A sec. 24y, dispone que el Tribunal de Apelaciones conocerá mediante recursos de apelación de toda sentencia final dictada por el Tribunal de Primera Instancia. En cambio, señala en el inciso (b) que mediante

*certiorari* expedido a su discreción, conocerá de cualquier resolución u orden dictada por el Tribunal de Primera Instancia.

Por su parte, la Regla 52.2 de Procedimiento Civil, supra, destaca que los recursos de apelación para revisar sentencias emitidas por el Tribunal de Primera Instancia deberán presentarse dentro del término jurisdiccional de treinta días, contados a partir del archivo en autos de la copia de la notificación de la sentencia dictada por el tribunal apelado. Igual término concede la Regla 13 del Reglamento del Tribunal de Apelaciones, supra.

Hemos expresado que los términos jurisdiccionales son improrrogables por lo que no están sujetos a interrupción o cumplimiento tardío. S.L.G. Szendrey-Ramos v. F. Castillo, supra, págs. 881-882. "Se denominan estos términos como jurisdiccionales o fatales porque transcurren inexorablemente, no importa las consecuencias procesales que su expiración provoque". Íd. Por ello, "una vez transcurre un término de naturaleza jurisdiccional, el tribunal o la agencia estatal pierde jurisdicción para atender el asunto ante su consideración". Íd.

Conforme a la Regla 52.2 de Procedimiento Civil, supra, y la Regla 33 del Reglamento del Tribunal de Apelaciones, supra, el término que se dispone para revisar una resolución, al igual que para revisar una sentencia, es de treinta días contados a partir del archivo en autos de copia de la notificación de la resolución. Véase, García Ramis v.

Serrallés, 171 D.P.R. 250, 253 (2007). Ahora bien, cuando se presenta una petición de certiorari, el término es de cumplimiento estricto, mientras que cuando se presenta una apelación, el término es jurisdiccional. Regla 33 del Reglamento del TA, supra.

Ello acarrea una diferencia cuando se está ante un término de cumplimiento estricto, pues "los tribunales no están atados al automatismo que conlleva un requisito de carácter jurisdiccional y pueden, por lo tanto, proveer el remedio que estimen pertinente, extendiendo el término según las circunstancias". S.L.G. Szendrey-Ramos v. F. Castillo, supra, pág. 881. Véase, además, Rojas v. Axtmayer Ent., Inc., 150 D.P.R. 560, 564 (2000). "Esto significa que su observancia tardía es permisible sólo de existir y demostrarse a cabalidad una justa causa para no cumplir rigurosamente con el término en cuestión". Figueroa v. Del Rosario, 147 D.P.R. 121, 127 (1998). Ahora bien, el que su cumplimiento no esté atado a la rigidez del término jurisdiccional no significa que el Tribunal de Apelaciones goza de discreción para prorrogarlo automáticamente. Rojas v. Axtmayer Ent., Inc., supra, pág. 564. Para hacerlo, la parte deberá demostrar al tribunal (1) la existencia de justa causa para la dilación; y (2) las bases razonables que tiene para ella. Íd., pág. 565. Ahora bien, la existencia de justa causa deberá demostrarse con "explicaciones concretas y particulares, debidamente evidenciadas, que le permitan al tribunal concluir que la tardanza o demora ocurrió por

*alguna circunstancia especial razonable*" …, y no "con excusas, vaguedades o planteamientos estereotipados". (Énfasis en el original.) <u>Lugo v. Suárez</u>, 165 D.P.R. 729, 738-739 (2005). Por tanto, "[e]n ausencia de estas condiciones, el tribunal carece de discreción para prorrogar el término y, por consiguiente, de acoger el recurso de *certiorari* ante su consideración". Íd., pág. 738.

Con este trasfondo doctrinal, evaluemos la naturaleza del recurso que tenía ante sí el Tribunal de Apelaciones.

## III

Conforme reseñamos anteriormente, el Art. 4.006(a) de la Ley de la Judicatura de 2003, <u>supra</u>, establece que para que el Tribunal de Apelaciones pueda acoger un recurso como *certiorari* debe tratarse de la revisión de una resolución y no de una sentencia. Al examinar los hechos de este caso, observamos que el 13 de mayo de 2009, el Tribunal de Primera Instancia emitió una **sentencia parcial** en que adjudicó el monto de la cuantía principal reclamada por POC en su demanda sobre cobro de dinero y determinó expresamente que lo único que restaba por resolverse era la cuantía a la que ascendían los intereses por mora acumulados sobre la deuda principal. Cónsono con lo anterior, se celebró una vista evidenciaria en que las partes estipularon y admitieron la cuantía de los intereses por mora reclamados por POC. De esa forma, como mismo expresó el Tribunal de Primera Instancia, la adjudicación de los intereses resolvía la reclamación de

POC en su totalidad y con ello se daba fin a la controversia que era objeto de la demanda.

En vista de lo anterior, es forzoso concluir que la sentencia del foro primario de 28 de septiembre de 2009, que adjudicó los intereses por mora, constituyó una sentencia y no una resolución, ya que puso fin al pleito. Al no tratarse de un incidente procesal dentro del pleito, era improcedente atender ese recurso como un certiorari. Peor aun es que el foro apelativo intermedio, al acoger el recurso como certiorari, solicitó a los recurridos que justificaran la crasa dilación en la presentación de su recurso pero estos nunca comparecieron.

Aclarado que erró el foro apelativo intermedio al acoger el recurso como certiorari, veamos el derecho correspondiente al efecto de la presentación de una petición de quiebra por un deudor en los casos en que concurren varios garantizadores de una misma deuda.

IV

Recientemente señalamos en Marrero Rosado v. Marrero Rosado, 178 D.P.R. 476, 490 (2010), que "[l]a paralización automática es una de las protecciones más básicas que el legislador estadounidense instituyó en el Código de Quiebras para los deudores que se acogen a éste". Con la paralización automática se impide, "entre otras cosas, el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole que fue o pudo haber sido interpuesto en contra del deudor, o para ejercitar cualquier acción cuyo

derecho nació antes de que se iniciara la **quiebra**". Íd., pág. 491. Véase, además, 11 U.S.C.A. sec. 362.

La paralización automática no requiere notificación formal; surte efectos desde que se presenta la petición de quiebra y se extiende hasta que se dicte la sentencia final. Íd. Véase, además, Jamo v. Katahdin Fed. Credit Union, 283 F.3d 392, 398 (1er Cir. 2002). La paralización automática impide el comienzo o la continuación de cualquier acción judicial o administrativa en contra del deudor pendiente o que pudo comenzar antes del inicio de la petición de quiebra. 11 U.S.C. sec. 362 (a)(1). A su vez, prohíbe las acciones judiciales y administrativas que se inicien en contra del deudor para recuperar reclamaciones hechas con anterioridad a la petición. Íd. De igual forma, la paralización automática prohíbe las acciones para cumplir sentencias que fueron obtenidas antes de que la petición de quiebra se haya iniciado. Íd.

Ahora bien, "[l]a responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de éste". Cámara Insular Etc. v. Anadón, 83 D.P.R. 374, 380 (1961). Véase, además, 11 U.S.C.A. sec. 524(e); 3 Collier on Bankruptcy sec. 362.03[3][d] (2010). El propósito de la ley "es proteger el ejercicio de cualquier acción que tenga el acreedor contra cualquier otra persona que se hubiere obligado conjuntamente con el deudor quebrado". Cámara Insular Etc. v. Anadón, supra, pág. 380.

En <u>Credit Alliance Corp. v. Williams</u>, 851 F. 2d 119 (4to Cir. 1998), el Tribunal de Apelaciones para el Cuarto Circuito afirmó que la presentación de una petición de quiebra al amparo del Capítulo 11 paraliza los procedimientos en contra del deudor que la solicita y no así contra los garantizadores solidarios de una deuda. Asimismo, dejó claro que los garantizadores solidarios deben presentar sus defensas y apelaciones a tiempo cuando están como demandados en un pleito en el que el deudor principal se sometió a la quiebra. De no hacerlo se arriesgan a que las sentencias recaídas se constituyan finales, adjudicadas en los méritos e imposibles de relitigarse por el principio de *res judicata*.

En ese caso, cuando el acreedor presentó una petición de embargo contra todos los deudores, la Corte Federal de Quiebras sostuvo que las disposiciones de la Ley de Quiebra con relación a la paralización automática hacían nula una sentencia en rebeldía declarada en contra del deudor principal y los deudores solidarios. El Tribunal de Distrito Federal revocó la determinación de la corte de quiebra y concluyó que la reclamación en contra de los garantizadores no fue paralizada por la presentación de la quiebra, ni mucho menos se convirtió en nula. De esa determinación, uno de los codeudores apeló.

El Tribunal Federal de Apelaciones para el Cuarto Circuito determinó que

> [e]l lenguaje claro de la Sección 362, sin
> embargo, dispone solo para la paralización

automática de los trámites judiciales y la ejecución de sentencias "contra el deudor o su propiedad inmueble." Véase *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124, 126-27 (4th Cir. 1983). El historial legislativo de esta disposición revela que el Congreso puso en vigor la Sección 362 para proveer protección a deudores en quiebra y facilitar la distribución ordenada de los activos del deudor entre sus acreedores. "La paralización automática es una de las protecciones fundamentales dispuestas en las leyes de quiebra. Esta le otorga al deudor un respiro de sus acreedores. . . . Le permite al deudor tratar de establecer un plan de pago o reorganización, o simplemente ser relevado de las presiones financieras que lo llevaron a la quiebra." S. Rep. No. 989, 95th Cong., 2d Sess. 54-55 (1978), *reimpreso en* 1978 *U.S. Code Cong. & Admin. News*, 5787, 5840-41; H. R. Rep. No. 595, 95th Cong., 2d Sess., 340 (1978), *reimpreso en* 1978 *U.S. Code Cong. & Admin. News*, 5963, 6296-97.

Nada dentro del contenido de la Sección 362 sugiere que haya sido la intención del Congreso que esta disposición le arrebatara a los acreedores del deudor en bancarrota la protección que procuraban y recibían cuando solicitaban que un tercero garantizara la deuda. El Congreso sabía cómo extender la paralización automática a las partes que no estaban en quiebra cuando se propuso hacerlo. El Título 13, por ejemplo, contiene una disposición estrictamente definida para paralizar los procedimientos contra una cantidad limitada de codeudores individuales de deudas del consumidor. Véase 11 U.S.C. § 1301(a). Bajo la Sección 362(a) no existe tal protección para los garantizadores de las quiebras por Título 11. Véase *Williford*, 715 F.2d, páginas 126-127.

Los garantizadores de los deudores que procedan en quiebra bajo el Título 11 están limitados a reclamaciones de rembolso o contribución hasta el límite permitido al amparo de 11 U.S.C. § 502(e) o la subrogación en los derechos del acreedor según 11 U.S.C. § 509. Este esquema protege al acreedor asegurado "hasta el límite de que un fiador o codeudor no está permitido a competir con el acreedor que éste ha asegurado hasta que la reclamación de la parte asegurada sea satisfecha en su totalidad." 124 Cong. Rec. H11089 (Sept. 28, 1978) (declaraciones del Rep. Edwards), *reimpreso en* 1978 *U.S. Code Cong. & Admin. News*, 6436, 6449-50. Una lectura de la sección 362 que restrinja la habilidad del

acreedor para proceder en contra de su garantizador eliminaría la protección de acreedores asegurados contemplada en la Ley de Quiebras.(Traducción nuestra.)

Credit Alliance Corp. v. Williams, supra, pág. 121.

Refiriéndose a lo resuelto en A. H. Robins Co. v. Piccinin, 788 F.2d 994 (4to Cir.), *cert. denegado*, 479 U.S. 876 (1986), el Tribunal expresó que en circunstancias inusuales, un tribunal, conforme a la sección 362, supra, puede paralizar procedimientos en contra de codeudores no amparados por la quiebra. Sin embargo, aclaró que esas circunstancias inusuales ocurren cuando

"[e]xiste tal identidad entre el deudor y el tercero demandado de manera que podría decirse que el deudor es la parte demandada real y que una sentencia contra el tercero demandado constituirá, en efecto, una sentencia o resolución contra el deudor", …, o cuando los procedimientos contra los codemandados no-deudores puedan reducir o minimizar "la propiedad del deudor [como el fondo de seguro del deudor] en perjuicio de los acreedores del mismo como conjunto". (Traducción nuestra.)

Íd., citando a A. H. Robins Co. v. Piccinin, supra, págs. 999 y 1008.

Tras concluir que en ese caso no se configuraron las circunstancias excepcionales que darían paso a la paralización a favor de los garantizadores, el tribunal determinó que la sentencia en rebeldía constituía una sentencia final en los méritos y los principios de *res judicata* impedían que se relitigaran defensas que pudieron ser invocadas en el tribunal estatal.

A igual conclusión llegó el Segundo Circuito en Queenie, Ltd. v. Nygard Intl., 321 F.3d 282, 287 (2do Cir.

N.Y. 2003) al establecer que la petición de quiebra de un deudor paraliza su apelación y la de su corporación, pero no así la de otros codemandados en el pleito. Véase, además, The Bankruptcy Code's Automatic Stay, 895 PLI/Comm 661, 674 (2007) (Debtor's filing of bankruptcy petition stayed his appeal and that of his wholly owned corporation, **but not that of co-defendants**).

En fin, salvo circunstancias excepcionales, "la iniciación del procedimiento de quiebra es una defensa personal que puede invocarse por el deudor peticionario únicamente, pero que no beneficia a los codeudores". (Traducción nuestra.) Íd. Véanse, además, In Re Robert F. Youngblood Constr. Co., 2012 Bankr. Lexis 1214 (Bankr. E.D.N.C. 2012); Schumacher v. White, 429 B.R. 400, 407 (2010); Liberty Mut. Ins. Co. v. Greenwich Ins. Co., 286 F. Supp. 2d 73, 76 (D. Mass. 2003); United States v. Rassmussen, 184 F.Supp. 351 (Minn. 1960); Trustees of Schools, etc. v. Chamberlain, 78 N.E.2d 525 (I11. 1948); Green v. Welsh, 956 F.2d 30 (2do Cir. N.Y. 1992).

Veamos entonces si la paralización automática generada a raíz de la presentación de la petición de quiebra de HTP benefició a los codeudores-recurridos.

                                V

De entrada debemos señalar que es incorrecta la determinación del foro apelativo intermedio de que la sentencia de 28 de septiembre de 2009 es nula y carece de efecto jurídico entre las partes luego de que el 7 de julio

de 2009 HTP presentara la petición de quiebra. Conforme reseñamos anteriormente, salvo en circunstancias excepcionales, que no están presentes aquí, la responsabilidad de un garantizador no se altera por la presentación de una petición de quiebra hecha por el deudor principal. Por consiguiente, cuando en un pleito hay varios codeudores, garantizadores o fiadores, estos no pueden ampararse en la quiebra de uno de los deudores para alegar también la paralización del proceso en su contra. Si lo hacen y la sentencia adviene final y firme, los principios de *res judicata* le imposibilitan relitigar el asunto. Véase, Credit Alliance Corp. v. Williams, supra.

Al recapitular los hechos de este caso, observamos que el 28 de septiembre de 2009 el Tribunal de Primera Instancia emitió la sentencia que condenó a los recurridos al pago de $148,054.69 en concepto de intereses por mora. Copia de la notificación de esa sentencia se archivó en autos **el 2 de octubre de 2009.** Así pues, los recurridos tenían hasta el **1 de noviembre de 2009** para acudir al Tribunal de Apelaciones. Sin embargo, el 19 de octubre de 2009 HTP presentó la moción para que se dejara sin efecto la sentencia por motivo de la petición de quiebra que había presentado. El Tribunal de Primera Instancia nunca dejó la sentencia sin efecto. Aunque el 23 de octubre de 2009, mediante resolución notificada el 13 de noviembre siguiente, decretó el caso paralizado, con ello no afectó el término de los recurridos para apelar. Es harto conocido que el Tribunal de Primera Instancia no puede

prorrogar el término para apelar. Plan Salud Unión v. Seaboard Sur. Co., 182 D.P.R. 714, 721 (2011); Vélez v. A.A.A., 164 D.P.R. 772, 786 (2005). El término no estaba paralizado para los recurridos pues ellos no se acogieron a la petición de la Ley Federal de Quiebras. Por consiguiente, erró el foro apelativo intermedio al acoger el recurso presentado, pues al momento en que lo hizo, ya había transcurrido el término de treinta días que tenían las partes para apelar.

Los recurridos no pueden alegar confusión ante la presentación de la petición de quiebra. Aunque el 19 de octubre de 2009, antes de vencer el plazo para apelar, HTP presentó la moción para que se dejara sin efecto la sentencia por motivo de la presentación de la petición de quiebra, lo cierto es que para ese entonces los recurridos desconocían cuál iba a ser la determinación del Tribunal de Primera Instancia. No estaban impedidos de presentar la apelación oportunamente, pues la paralización a favor de HTP no los cobijaba a ellos ni paralizaba los términos para ir en apelación. Esto se debe a que la presentación de la petición de quiebra de HTP es un incidente aparte que no paralizó los efectos de la sentencia en contra de las demás partes, como lo haría una moción al amparo de la Regla 43 o 47 de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. Recordemos que en virtud del Art. 1090 del Código Civil, 31 L.P.R.A. sec. 3108, cuando los recurridos firmaron la garantía, se convirtieron en garantizadores solidarios de la

obligación que HTP contrajo con POC. Por ello, POC puede exigirle su acreencia a cualquiera de los deudores o a todos simultáneamente. Resolver lo contrario implicaría sostener que la presentación de una petición de quiebras tiene el efecto de desgarrar la solidaridad pactada.

Como último señalamiento, cabe apuntar que POC presentó una moción al amparo de la entonces vigente Regla 51.7 de Procedimiento Civil de 1979,[3] <u>supra</u>, para cobrar de los recurridos la sentencia que advino a su favor.

Esa regla, como explicó el Comité Asesor de las Reglas de Procedimiento Civil, se conceptualizó para evitar que "deudores solidarios **que no formaron parte de un pleito** obstaculicen e impidan que el acreedor presente una

---

[3] "51.7 Procedimientos en sentencia contra deudores solidarios

Cuando se obtiene una sentencia contra uno o más entre varios deudores solidariamente responsables de una obligación, aquellos deudores que no fueren partes en la acción, podrán ser citados para que comparezcan a mostrar por qué causa no han de estar obligados por la sentencia de igual modo que si hubieren sido demandados desde un principio. La citación, conforme lo dispuesto en esta regla, deberá relacionar la sentencia, y requerir a la persona citada para que comparezca determinado día y hora a mostrar causa de por qué no ha de estar obligada por dicha sentencia. No será necesario entablar nueva demanda. La citación deberá acompañarse de una declaración escrita y jurada del demandante, su agente, representante o abogado, manifestando que la sentencia o parte de ella, permanece incumplimentada y expresando además, la cantidad que a cuenta de la misma se debiere.

Hecha la citación, el deudor citado deberá comparecer en la fecha que se indica en la citación, y en dicha vista podrá aducir cualquier defensa de hecho y de derecho para eximirle de responsabilidad. Las cuestiones así planteadas podrán substanciarse como en los demás casos".

reclamación contra éstos como co-deudores solidarios". Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, Informe de Reglas de Procedimiento Civil, Marzo 2008, págs. 582-583. Sin embargo, el Comité Asesor recomendó su eliminación, pues "lo dispuesto en la regla es contrario al ordenamiento jurídico, ya que permite ejecutar una sentencia contra una persona **que no fue parte en el pleito** y sobre la cual el tribunal no adquirió jurisdicción". (Énfasis nuestro.) Íd., pág. 583.

Como se aprecia, la utilización de esa regla era improcedente en este caso, toda vez que POC demandó desde el inicio a todos los codeudores, por lo que estos eran parte. Lo que procedía era solicitar la ejecución de la sentencia, conforme la Regla 51.2 de Procedimiento Civil de 1979, supra, vigente al momento. Sin embargo, aunque POC invocó la regla incorrecta, su petitorio procedía.

VI

Por los fundamentos antes expuestos, revocamos al Tribunal de Apelaciones pues al momento en que revisó la sentencia del Tribunal de Primera Instancia de 28 de septiembre de 2009, carecía de jurisdicción para hacerlo. Asimismo, declaramos que la sentencia de 28 de septiembre de 2009 del Tribunal de Primera Instancia no surte efecto en cuanto a HTP, pero sí en cuanto a los recurridos, pues la petición de quiebra no los cobija. Por último, se devuelve el caso al Tribunal de Primera Instancia, Sala de Ponce,

para la continuación de los procedimientos de forma compatible con lo resuelto aquí.

Se dictará sentencia de conformidad.


                              Rafael L. Martínez Torres
                                   Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Peerless Oil & Chemical, Inc.<br><br>     Peticionaria<br><br>       v.<br><br>Hermanos Torres Pérez, Inc.<br>     Demandados<br><br>Víctor Torres Oliveras, Hilda Pérez Souchet y la Sociedad Legal de Gananciales compuesta por ambos; Víctor Torres Pérez, Annette Fuster Padilla y la Sociedad Legal de Gananciales compuesta por ambos; Germán Rivera Colón, Wanda Torres Pérez y la Sociedad Legal de Gananciales compuesta por ambos; Luis Vélez Santiago, María Torres Pérez y la Sociedad Legal de Gananciales compuesta por ambos; Hilda Torres Pérez<br><br>     Recurridos | CC-2010-1087 |

SENTENCIA

En San Juan, Puerto Rico, a 13 de julio de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, revocamos al Tribunal de Apelaciones pues al momento en que revisó la sentencia del Tribunal de Primera Instancia de 28 de septiembre de 2009, carecía de jurisdicción para hacerlo. Asimismo, declaramos que la sentencia de 28 de septiembre de 2009 del Tribunal de Primera Instancia no surte efecto en cuanto a HTP, pero sí en cuanto a los recurridos, pues la petición de quiebra no los cobija. Por último, se devuelve el caso al Tribunal de Primera Instancia, Sala de Ponce, para la continuación de los procedimientos de forma compatible con lo resuelto aquí.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo